IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

1. DAMIEN MIKELL DM-6559, PRO SE
Box A, Bellefonte, Pa. 16823,
Plaintiff

v.

1. SHIRLEY R. MOORE SMEAL, FORMER DEPUTY SECRETARY-CENTRAL REGION;

2. FRANKLIN J. TENNIS, FORMER SUPERINTENDENT;

3. ROBERT MARSH, DEPUTY SUPERINTENDENT;

4. BRIAN THOMPSON, FORMER DEPUTY SUPERINTENDENT;

5. MELINDA SMITH, FORMER PROGRAM MANAGER;

6. CRAIG HARPSTER, UNIT MANAGER;

7. LYNN EATON, SECURITY CAPTAIN;

8. ROBERT VANCE, SECURITY LIEUTENANT;

Defendants

CIVIL COMPLAINT

Civil No. 11-388

Jury Trial Demanded

FILED
SCRANTON
MAR 01 2011
Per AMO
DEPUTY CLERK

TO BE FILED UNDER: 42 U.S.C. §1983.-STATE OFFICIALS

## I. PREVIOUS LAWSUITS

A. I have never filed a lawsuit in federal court.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

A. Yes, there is a prisoner grievance procedure available at my present institution.

B. Yes, I have fully exhausted my available administrative remedies regarding each of my present claims.

C. Yes, I filed a grievance at the initial level within institution, appealed decision to second level within institution and appealed decision again to the Chief Grievance Officer in Camphill in which I was denied relief at all three (3) levels in the grievance review process. (See: Exh.A)

## III. DEFENDANTS

1. SHIRLEY R. MOORE SMEAL, employed as Executive Deputy Secretary at D.O.C. Central Office, Box-598, Camphill, PA. 17001-0598.
2. FRANKLIN J. TENNIS, employment and mailing address unknown.
3. ROBERT MARSH, employed as Deputy Superintendent at SCI-Rockview, Box A, Bellefonte, PA. 16823.
4. BRIAN THOMPSON, employment and mailing address unknown.

5. MELINDA SMITH, employment and mailing address unknown.

6. CRAIG HARPSTER, employed as Unit Manager at SCI-Rockview, Box A, Bellefonte, PA. 16823.

7. LYNN EATON, employed as Security Captain at SCI-Rockview, Box A, Bellefonte, PA. 16823.

8. ROBERT VANCE, employed as Security Lieutenant at SCI-Rockview, Box A, Bellefonte, PA. 16823.

**IV. STATEMENT OF CLAIM**

1. Please see attached Complaint.

**V. RELIEF**

1. Please see attached Complaint.

I declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the foregoing is true and correct.

Date: 2 / 16 / 11

Damien Mikell
Mr. Damien Mikell, Pro Se
Box-A
Bellefonte, Pa. 16823-0820

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DAMIEN MIKELL,
Plaintiff

v.

SHIRLEY R. MOORE SMEAL, FORMER DEPUTY SECRETARY-CENTRAL REGION;
FRANKLIN J. TENNIS, FORMER SUPERINTENDENT;
ROBERT MARSH, DEPUTY SUPERINTENDENT;
BRIAN THOMPSON, FORMER DEPUTY SUPERINTENDENT;
MELINDA SMITH, FORMER PROGRAM MANAGER;
CRAIG HARPSTER, UNIT MANAGER;
LYNN EATON, SECURITY CAPTAIN;
ROBERT VANCE, SECURITY LIEUTENANT;
DALE DAVIS, CORRECTIONAL OFFICER;

DEPARTMENT OF CORRECTIONS, CAMPHILL, PA.
SCI-ROCKVIEW, BELLEFONTE, PA.

in their individual and official capacities,
Defendants,

Civil No.__________

Jury Trial Demanded

**Complaint**

I. INTRODUCTION

1. Plaintiff, Damien Mikell, a prisoner incarcerated at SCI-Rockview, brings this civil rights action under 42 U.S.C. § 1983, asserting claims under the Eighth and Fourteenth Amendments of the United States Constitution against certain prison officials employed, or formerly employed, by the Pennsylvania Department of Corrections ("D.O.C").

2. Plaintiff's claims arise from Defendants' failure to protect Plaintiff from a vicious attack at the hands of another inmate at SCI-Rockview, despite their knowledge of the attacker's dangerousness and the risk of harm he posed to Plaintiff.

## II. JURISDICTION AND VENUE

3. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343.

4. Venue is proper under 28 U.S.C. § 1391 (b), as all of the causes of action upon which the complaint is based arose in Centre County, Pennsylvania, which is the Middle District of Pennsylvania.

## III. PARTIES

5. Plaintiff, Damien Mikell, is a citizen of the United States of America and is incarcerated at SCI-Rockview, which is a D.O.C. institution in Bellefonte, Pennsylvania.

6. Defendant Shirley R. Moore Smeal, former Deputy Secretary-Central Region, was at all times relevant hereto an employee of the D.O.C. at the Camphill Central Office.

7. Defendant Franklin J. Tennis, former Superintendent, was at all times relevant hereto an employee of the D.O.C. at SCI-Rockview.

8. Defendant Robert Marsh, Deputy Superintendent, is and was at all times relevant hereto an employee of the D.O.C. at SCI-Rockview.

9. Defendant Brian Thompson, former Deputy Superintendent, was at all times relevant hereto an employee of the D.O.C. at SCI-Rockview.

10. Defendant Melinda Smith, former Program Manager, was at all times relevant hereto an employee of the D.O.C. at SCI-Rockview.

11. Defendant Craig Harpster, Unit Manager, is and was at all times relevant hereto an employee of the D.O.C. at SCI Rockview.

12. Defendant Lynn Eaton, Security Captain, is and was at all times relevant hereto an employee of the D.O.C. at SCI-Rockview.

13. Defendant Robert Vance, Security Lieutenant, is and was at all times relevant hereto an employee of the D.O.C. at SCI-Rockview.

14. Defendant Dale Davis, Corrections Officer, is and was at all times relevant hereto an employee of the D.O.C. at SCI Rockview.

15. At all times relevant to the allegations in this complaint, all Defendants were acting under color of state law.

16. All Defendants are sued in their individual and official capacities.

## IV. FACTS

17. Plaintiff has been incarcerated at SCI-Rockview since 2006.

18. Prior to the attack underlying this complaint, Plaintiff was attacked from behind and stabbed by other inmates, who the Plaintiff could not identify, on November 23, 2008.

19. Plaintiff was issued a misconduct for "Fighting", which Plaintiff contested and appealed, but Plaintiff's appeal was denied by Defendants Tennis, Thompson, Marsh and Smith.

20. Plaintiff was placed in the Restricted Housing Unit ("RHU") for approximately forty-five (45) days as a result, despite the fact that Plaintiff had been attacked from behind and, therefore, could not see who had assaulted him.

21. After serving his disciplinary sentence in the RHU, Plaintiff was then removed from the RHU, placed in Administrative Custody ("AC") and removed from the general population, for his own protection.

22. Inmate Gregory Middleton was incarcerated at SCI-Rockview from approximately 2002 until February 20, 2009.

23. Inmate Middleton has a past violent history both outside and inside prison, including convictions for assault by prisoner and attempted murder while incarcerated within D.O.C., for which he received a life sentence on March 7, 2003.

24. Inmate Middleton has assaulted D.O.C. staff and fellow inmates while at SCI-Rockview and has been admitted for mental evaluations on numerous occasions due to his mental instability and assaultive tendencies.

25. D.O.C. Policy, which was applicable during the relevant time period, provides that any inmate who has a history of assaultive behavior regarding cell partners and/or mental health problems shall be carefully considered for Program Code "Z" housing classification, or Single-Cell status.

26. A "Z" status classification, or single-cell classification, is determined by the Program Review committee ("PRC") and/or the Unit Manager based on the inmate's misconduct reports, psychological evaluations and reports from other staff members who know about the inmate's assaultive behavior.

27. Single-Cell status is a Policy that is used to Protect inmates from dangerous and violent inmates who are at risk of attacking their cellmates.

28. Inmate Middleton was on Single-Cell status and did not have a cellmate during periods from 2004 until February 20, 2009.

29. Inmate Middleton refused cellmate on numerous occasions at SCI-Rockview, which are documented and known by the Defendants

30. Inmate Middleton told a fellow inmate at SCI-Rockview that he would set an example and seriously injure a cell partner if the D.O.C. staff tried to take away his "Z" code and put him in a double cell. **(SEE: Exhibit B)**

31. Inmate Middleton made numerous threats to staff members at SCI-Rockview, including to Defendant Harpster, that if he was taken off "Z" status, he would kill any cellmate with whom he was housed.

32. In 2008, Inmate Middleton was placed on Disciplinary Custody ("DC") status and sent to the RHU for threatening a Corrections Officer who attempted to take him out of his Single-Cell and give him a cellmate.

33. Shortly after being placed in the RHU in 2008, Inmate Middleton's mother wrote Defendant Smeal a letter informing Defendant Smeal that Inmate Middleton was placed in the RHU for threatening a Corrections Officer who attempted to take his Single-Cell as well as Inmate Middleton not willing to take a cellmate.

34. Defendant Smeal, in response to the abovementioned letter, wrote to Inmate Middleton's Mother acknowledging Inmate Middleton's refusal to have a cellmate and, further, Defendant Smeal offered her confidence SCI-Rockview staff members would deal with Inmate Middleton and his Single-Cell issue the best way they see fit.

35. On December 18, 2008, Defendants Marsh, Thompson and Smith moved Inmate Middleton from DC, which was for disciplinary violations, to AC status, which is documented in their PRC report.

36. The PRC report also stated that Inmate Middleton does not want a cellmate.

37. On January 8, 2009, Defendant Harpster's Unit Management Review which was documented on a PRC report, stated that Inmate Middleton was still unwilling to have a cell partner.

38. On February 5, 2009, Defendant Harpster's Unit Management Review, which was documented on a PRC report, stated that Inmate Middleton would continue his same status until he was willing to have a cell partner.

39. Defendants Marsh, Thompson and Smith are members of the PRC and have knowledge of PRC reports and recommendations regarding an inmate's status.

40. On February 20, 2009, while Plaintiff was in the "AC" recreational yard, Defendant Davis moved Plaintiff's property from his Single-Cell on the second-tier of the "AC" Unit into a cell on the first-tier occupied by Inmate Middleton.

41. At that time, Plaintiff was still being held on "AC" status for his own safety and protection from others.

42. Upon being informed that Plaintiff would be placed in a cell with Inmate Middleton, Plaintiff asked Defendant Davis if he could be placed in a different cell because Inmate Middleton was dangerous, refused cellmates and would harm Plaintiff.

43. Defendant Davis denied Plaintiff's request to be given another cell and shoved Plaintiff into the cell with Inmate Middleton.

44. The Plaintiff was placed in Inmate Middleton's cell despite Plaintiff's "AC" status requiring him to be protected from other inmates and despite Inmate Middleton's known dangerousness and history of assault.

45. Shortly after entering cell, Inmate Middleton punched Plaintiff and knocked him unconscious.

46. Inmate Middleton tied Plaintiff's hands behind his back as he continued to punch the Plaintiff and then Inmate Middleton started a fire in the cell.

47. Plaintiff awoke to the smell of smoke, his hands tied, and Inmate Middleton punching him.

48. Inmate Middleton punched Plaintiff in the face, chest and back.

49. As a result of the assault, Plaintiff suffered from jaw pain, back and shoulder pain, as well as emotional and mental suffering.

50. After Plaintiff was assaulted by Inmate Middleton, Plaintiff was briefly placed in the RHU on a "Seperate from ALL Status" but was then moved back into AC.

51. Plaintiff requested that he be placed back on a "Seperate From ALL" status for fear of his safety, but Defendant Marsh denied this request since he determined Plaintiff did not meet the criteria for a "Z" code.

52. Despite being assaulted twice in a short period of time, Defendant Eaton told Plaintiff he would remain on Long-term Uncooperative AC status for failing to identify his attackers from March 23, 2008 assault.

53. An Inmate on Long-term Uncooperative AC status has more restrictions and fewer privileges than other AC inmates in the

general population.

54. While on Long-Term Uncooperative AC status, Defendant Eaton told Plaintiff that he was being denied certain privileges, such as use of a typewriter, because he did not cooperate with D.O.C. staff to identify his attackers, despite the fact that Plaintiff had been attacked from behind and, therefore, could not see who had assaulted him.

55. Plaintiff asked Defendant Eaton and the PRC, which includes Defendants Marsh, Thompson and Smith, to be removed from Long-Term Uncooperative AC status, released into the general population or transferred to another D.O.C. facility because he did not see who attacked him on November 23, 2008.

56. Defendant Eaton and Defendant Marsh denied Plaintiff's request because they stated the Plaintiff should have known who stabbed him on November 23, 2008, even though he was attacked from behind.

57. Defendant Smeal was the Deputy Secretary of the Central Region for the D.O.C. during the time period encompassed by this complaint and, as such, it was her responsibility to manage all the D.O.C. institutions day-to-day operations within the Central Region, Supervise, Monitor, Train, Retrain and Discipline prison employees, and to protect the health and safety of the inmates.

58. As the Deputy Secrety of the Central Region, Defendant Smeal exercised Supervisory Authority over all other D.O.C. officials and staff within the Central Region of D.O.C. institutions which encompasses SCI-Rockview, including Defendants Tennis, Marsh, Thompson, Smith, Harpster, Vance, Eaton and Davis.

59. Inmate Middleton's extensive violent criminal record, including convictions of attempted murder within the D.O.C. and assault by prisoner, was documented in Inmate Middleton's D.O.C. records and was well-known by staff, including Defendant Smeal.

60. Defendant Tennis was the Superintendent at SCI-Rockview during the time period encompassed by this Complaint and, as such, it was his responsibility to manage the prison's day-to-day operations, supervise, monitor, train, retrain, and discipline prison employees, and to protect the health and safety of the inmates.

61. As the Superintendent of SCI-Rockview, Defendant Tennis exercised supervisory authority over all other D.O.C. officials and staff within the institution, including Defendants Marsh, Thompson, Smith, Harpster, Vance, Eaton and Davis.

62. Inmate Middleton's extensive violent criminal record, including convictions of attempted murder within the D.O.C. and assault by prisoner, was documented in Inmate middleton's D.O.C. records and was well-known by staff, including Defendant Tennis.

63. Defendant Tennis knew of Inmate Middleton's aggression toward both D.O.C. staff and other inmates and threats that he would harm and/or kill any cellmate.

64. Defendant Tennis knew Inmate Middleton threatened a Corrections Officer at SCI-Rockview for attempting to take away his "Z" code (thereby eliminating Inmate Middleton's single-cell status). for which he was disciplined, given DC status and placed in the RHU.

65. Defendant Tennis knew Inmate Middleton posed a substantial risk to the safety of any inmate with whom he was housed.

66. Despite this knowledge of Inmate Middleton's dangerousness, Defendant Tennis failed to establish or maintain a policy, practice or custom of monitoring and supervising dangerous inmates on "Z" or single-cell status, such as Inmate Middleton.

67. Defendant Tennis's failure to establish or maintain a policy, practice, or custom of monitoring, supervising, training and retraining PRC members, including Defendants Marsh, Thompson, and Smith and Unit Managers, including Defendant Harpster, with regard to eliminating "Z" codes and single-cell status for violent inmates, created an unreasonable risk that dangerous inmates, such as Inmate Middleton, would violently attack a inmate they were housed with.

68. Defendant Tennis was aware that this unreasonable risk existed.

69. As a result of Defendant Tennis's failure to establish adequate policies and procedures pertaining to Z codes and single-celling, as described above, Plaintiff was forced to house with Inmate Middleton and was viciously assaulted.

70. As the Superintendent of SCI-Rockview, Defendant Tennis was responsible for establishing, overseeing and enforcing policies and procedures related to maintaining adequate staffing and supervision on each of the institution's housing units.

71. Defendant Tennis was responsible for ensuring that members of each unit's security team, such as Defendants Eaton, Vance and Davis, followed adequate and safe procedures relating to the movement and cell assignment of inmates with "Z" codes, single-cell status and/or AC status.

72. Defendant Tennis failed to ensure that such procedures were followed by Defendants Eaton, Vance and Davis, thereby resulting in Inmate Middleton's attack on Plaintiff.

73. Defendant Tennis failed to establish,maintain,monitor and enforce policies and procedures relating to the movement and cell assignment of inmates such that inmates would not be attacked by dangerous cellmates, who the staff knew were a threat

and would pose a substantial risk to the safety of their cell partners.

74. Defendant Tennis failed to adequately monitor and supervise Defendants Eaton,Vance and Davis in the performance of their duties related to cell assignments for dangerous inmates and the elimination of Z codes or single-cell status for such inmates

75. Defendant Tennis's failure to monitor and supervise Defendants Eaton,Vance and Davis, as described above, resulted in Inmate Middleton's vicious attack on Plaintiff.

76. At all times relevant to this complaint,Defendants Deputy Superintendent Marsh, Deputy Superintendent Thompson and Program Manager Smith were members of the PRC.

77. Members of the PRC exercise authority over AC and DC housing confinement and hear all first level appeals of misconducts.

78. Defendants Marsh,Thompson and Smith were responsible for determining Inmate Middleton's housing assignment.

79. Defendants Marsh,Thompson and Smith knew that Inmate Middleton's violent history and past refusal to double cell would create a serious threat to the safety of any cellmate with whom he was assigned.

80. Defendants Marsh,Thompson and Smith had such knowledge because:

a. The PRC's decision to place an inmate in AC must be based on evidence and the inmate's D.O.C. file, which includes the inmate's misconduct reports, counselor recommendations, psychological reports and reports of other staff members who have knowledge of the inmate's behavior.

b. Inmate Middleton has an extensive violent criminal record, including a conviction of attempted murder,which occurred while he was incarcerated, and an assault by prisoner. This record was documented in Inmate Middleton's D.O.C. records and was well-known by staff, including Defendants Marsh,Thompson and Smith.

c. Inmate Middleton threatened a Corrections Officer at SCI-Rockview in 2008 for attempting to remove him from a single-cell, for which he was sent to the RHU and placed on DC status. This incident was documented at SCI-Rockview and was known by staff, including Defendants Marsh,Thompson and Smith.

d. Defendants Marsh,Thompson and Smith performed custody status reviews of Inmate Middleton and his D.O.C. file.

e. Defendants Marsh,Thompson and Smith moved Inmate Middleton from DC to AC status and cited in their report that he does not want a cellmate.

f. Defendants Marsh,Thompson and Smith knew that Inmate Middleton had made threats to Security staff members that he would harm and/or kill any cellmate with whom he was assigned.

81. The decisions Defendants Marsh,Thompson and Smith to place Inmate Middleton with a cell partner, despite their knowledge of his threats and dangerousness, created a serious risk to Plaintiff and resulted in his consequent injury.

82. At all times relevant to this complaint,Defendant Harpster was Unit Manager of the AC housing Unit where Plaintiff and Inmate Middleton were housed.

83. As Unit Manager,Defendant Harpster reviewed, designated and/or approved cell assignments.

84. Defendant Harpster took part in assigning Plaintiff to the cell with Inmate Middleton.

85. Prior to assigning Plaintiff to the cell with Inmate Middleton, Defendant Harpster knew that Inmate Middleton's violent history,past refusal to double cell and threats that he would harm and/or kill any inmate with whom he was double celled in order to get and/or retain "Z" status, would create a significant risk to any inmate celled with Inmate Middleton.

86. Defendant Harpster had such knowledge because:

a. Plaintiff heard Inmate Middleton state to Defendant Harpster in early 2008,that he would kill any cellmate he was placed with if taken off "Z" status.

b. Defendant Harpster knew of Inmate Harpster knew of Middleton's past refusal to double cell.

c. Defendant Harpster had reviewed Inmate Middleton's record and single-cell status on multiple occasions and had suggested that it continue until he is ready to have a cellmate.

d. On February 5, 2009, which was only fifteen (15) days before the Plaintiff was assaulted,Defendant Harpster recommended that Inmate Middleton continue to be single-celled until he becomes willing to take a cellmate.

e. As Unit Manager,Defendant Harpster knew of Inmate Middleton's threats to PRC members and Security staff that if he was double-celled, he would harm and/or kill his cellmate in order to get "Z" status or a Single Cell.

87. At all times relevant to this Complaint,Defendant Eaton was Captain whose responsibilities included management of security office and supervision of inmates in AC.

88. Defendant Eaton supervised Defendants Vance and Davis, who both were posted to the security office.

89. At all times relevant to this Complaint,Defendant Vance was a Lieutenant whose responsibilities included the supervision of the Plaintiff and Inmate Middleton.

90. At all times relevant to this Complaint,Defendant Davis was a Corrections Officer assigned to the security office.

91. Defendant Davis implemented orders,including those pertaining to cell assignments and movement of inmates,and reported to Defendants Eaton and Vance.

92. Defendants Eaton,Vance and Davis are responsible for the movement and transportation of inmates and their belongings from one cell to another. As such, they had responsibility over the movement of the Plaintiff and Inmate Middleton.

93. Defendants Eaton,Vance and Davis knew that if Inmate Middleton was double-celled with another inmate he would constitute a serious threat to the safety of his cellmate.

94. Defendants Eaton,Vance and Davis had such knowledge because:

a. It is common practice for Correctional Officers and other institutional staff to be notified about grievances and concerns regarding inmates which relate to their posts,duties or areas of responsibility.

b. It was well-known in their area of responsibility that Inmate Middleton, who they supervised, threatened to harm and/or kill any cellmate with which he was placed.

c. Inmate Middleton's file,which as members of the Security Team Defendants Eaton,Vance and Davis had reviewed as part of their duties, contained his violent criminal history both in and outside the D.O.C., past threats and refusal to double-cell.

d. Inmate Middleton's threats regarding being double-celled are well-documented in his D.O.C. file, which Defendants Eaton, Vance and Davis reviewed as part of their duties.

95. Despite their knowledge of Inmate Middleton's dangerousness and the risk he posed to any cell partner, Defendants Eaton,Vance and Davis directed the Plaintiff into the cell with Inmate Middleton.

96. Defendant davis also had knowledge that Inmate Middleton would harm Plaintiff, because Plaintiff told Defendant Davis this before Defendant Davis pushed Plaintiff into the cell with Inmate Middleton.

97. As a direct and proximate result of the said acts of Defendants, Plaintiff suffered, and continue to suffer, the following injuries and damages:

a. Violation of his Constitutional Rights under Eighth and Fourteenth Amendments to be free from cruel and unusual punishment;

b. Physical pain and suffering;

c. Emotional and Mental pain and suffering.

## V. CAUSE OF ACTION

98. Plaintiff incorporates by reference paragraphs 1 through 97 above as if fully set forth herein for all causes of action.

99. Defendants' failure to protect Plaintiff from attack by Inmate Middleton violated the Plaintiff's Eighth Amendment and Fourteenth Amendment Rights under the United States Constitution in that it constituted deliberate indifference to a substantial risk of serious harm.

100. As a result of this Constitutional Violation, Plaintiff suffered injuries and damages as described above.

## VI. RELIEF

**WHEREFORE**, Plaintiff respectfully request that this Court:

1. Award compensatory damages to Plaintiff against Defendants;

2. Award punitive damages to Plaintiff against Defendants;

3. Award Declaratory relief that Plaintiff's constitutional rights were violated by Defendants;

4. Award the costs of this action to Plaintiff; and,

5. Award such other and further relief as this Court may deem appropriate.

Respectfully Submitted,

Date: February 16th, 2011

Damien Mikell, Pro Se
DM6559
SCI-Rockview
Box A
Bellefonte, Pa. 16823-0820

Exh. A

(1 of 2)

DC-804
Part 1

MAR 2 2009

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P. O. BOX 598
**CAMP HILL, PA 17001-0598**

FOR OFFICIAL USE ONLY
263943
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR "Mr. Jeffrey Rackovan" | FACILITY: SCI - RockView | DATE: 3-1-09 |
|---|---|---|
| FROM: (INMATE NAME & NUMBER) Mr. Damien Mikell DM-6559 | SIGNATURE of INMATE: Damien Mikell | |
| WORK ASSIGNMENT: N/A | HOUSING ASSIGNMENT: "J-Block" Cell - B-1005 | |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8 1/2" x 11" page). ***State all relief that you are seeking.***

Good day. My "grievance" is against the entire Administration of SCI-RockView, more specifically, "COI Davis", for placing me in a "deadly situation" where staff members knew or should have known the potential outcome resulting in me being "knocked out", "tied up", and almost set on fire! As a result of this "vicious attack" I sustained major "back" and "shoulder" injuries as well as "mental" and "emotional" stress!

On 2-20-09, while being held on "AC" status by the Security Staff & P.R.C. for my Own Safety & Protection from Others, I was moved out of a cell where I was living by myself and placed into a cell with an inmate who is "crazy" and was on "AC" status for refusing to take "Cellmate and reportedly told "P.R.C" & "the Security Staff" he would "kill" anybody they put in his cell. "COI Davis" brought me to this cell upon coming in from yard after already putting my property from my old cell into this new cell while I was in the yard. I asked "COI Davis" if I could move into another cell. "COI Davis" stated real loud ", Are you refusing?", in which I stated "no" and "COI Davis" then "shoved" me into this cell! After

(1 of 2)

**B.** List actions taken and staff you have contacted, before submitting this grievance.

1) I spoke to Security Lt. Vance after having Lt. Grassmeyer contact Lt. Vance letting him know my wishes of filing a criminal complaint.

2) I wrote and spoke with psychologist, Ms. McKean & Mr. Durst.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Major Snedeker

Jeffrey Rackovan — Conditions — 3/5/09 — 3/12
Signature of Facility Grievance Coordinator — Date

Due 3/19

WHITE - Facility Grievance Coordinator Copy **CANARY** - File Copy **PINK** - Action Return Copy **GOLDENROD** - Inmate Copy
Revised
April 2005

(2 of 2)

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P. O. BOX 598
**CAMP HILL, PA 17001-0598**

FOR OFFICIAL USE ONLY
213943
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR Mr. Jeffrey Rackovan | FACILITY: SCI-RockView | DATE: 3-1-09 |
|---|---|---|
| FROM: (INMATE NAME & NUMBER) Mr. Damien Mikell DM-6589 | SIGNATURE of INMATE: Damien Mikell | |
| WORK ASSIGNMENT: N/A | HOUSING ASSIGNMENT: "J-Unit" - Cell B-1005" | |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8 1/2" x 11" page). ***State all relief that you are seeking.***

talking to this inmate trying to tell him I did not request to move in his cell, this inmate turned his back to me and then turned back around swinging a punch that hit me. All I saw was black and then this inmate on top of me punching me while CO's stood and looked through the cell bars! I smelled smoke but couldn't defend myself because my hands were tied behind my back. CO's finally came in and pulled this inmate off of me and grab me as my jumpsuit was almost catching fire! I feel very unsafe because I have almost died "twice" (physically assaulted) by being "stabbed" & "almost burned alive" within a four (4) month period in SCI-RockView!

The relief I am seeking is for criminal charges & civil claims to be brought against the "Administration" for "Negligence" and "Poor Prison Conditions" for, once again, "Failing To Protect" me and knowingly putting me in a very deadly situation. I am seeking whatever monetary damages / compensation for "punitive" & "compensatory" damages I am entitled to under any "civil" and/or criminal law for my physical, emotionally, but most importantly mental anguish & pain.
(2 of 2)

B. List actions taken and staff you have contacted, before submitting this grievance.

1) I spoke to Security Lt. Vance after having Lt. Grossmeyer contact Lt. Vance letting him know my wishes of filing a criminal complaint.

2) I wrote and spoke with psychologist, Ms. McKeon & Mr. Durst.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Jeffrey Rackovan
Signature of Facility Grievance Coordinator

3/5/09
Date

WHITE - Facility Grievance Coordinator Copy CANARY - File Copy PINK - Action Return Copy GOLDENROD - Inmate Copy
Revised
April 2005

DC-804
Part 2

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001

Revised
December 2000

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE

GRIEVANCE NO. #ROC-263943-09

| TO: (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| Damien Mikell, DM-6559 | SCIR | D-AC-1032-01 | 03/01/09 Received 03/05/09 |

The following is a summary of my findings regarding your grievance:

I have reviewed your complaint and find it without merit. The inmate you were placed in the cell with did not have any official separations from anyone nor did he indicate he would not take a cell partner. We cannot anticipate what inmates will do in all situations and you do not qualify for a single cell. Officer Davis states the inmate actually agreed to have you put in the cell. You apparently had some concern about being placed in the cell but when Officer Davis asked you if you were refusing and would be issued a misconduct for non compliance, you agreed to be placed in the cell. We removed you from the cell as quickly as possible after discovering you were being assaulted.

JAR:tlk

c: Deputy Thompson – Major Snedeker
DC-15
Mr. Rackovan

| Print Name & Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| SNEDEKER | Major Snedeker | 3-11-09 |

(1 of 2)

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

State Correctional Institution
RECEIVED
MAR 2 4 2009
at Rockview
Superintendent's Office

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer) "Superintendent Tennis" "Grievance Appeal" "Business Office"
2. Date: 3-19-09
3. By: (Print Inmate Name and Number) Mr. Damien Mitchell DM-6339

   Damien Mitchell
   Inmate Signature
4. Counselor's Name "Mr. Bonsdorf"
5. Unit Manager's Name "Mr. Hazelton"
6. Work Assignment N/A
7. Housing Assignment "DA/AC" - Cell - 1032
8. Subject: State your request completely but briefly. Give details.

Superintendent Tennis:

Good day. I am appealling grievance # ROC-263943-09 after being denied for allegedly being without merit. This is not the case. I expressed great concern for being placed in the cell with the inmate because of being [illegible] the fact he was on "AC" status for refusing to take a cellmate. I did not willingly agree or want to be placed in this cell but was physically forced into this cell as well as explicitly threatened with a misconduct if I would not [illegible] into this cell, basically given the choice of receiving a misconduct or placing my safety in jeopardy. Contrary to the grievance denial, this inmate [illegible] several times [illegible] refused to take a cellmate. This inmate was taken to RHU/"AC" for not taking a cellmate when [illegible] about his single cell he was living in on A-Block. After being in the "RHU" and finishing his "DC" time, he was placed on "AC" status as [illegible] his "Other Right" will [illegible] as his "30 day" that "Management Team" [illegible] will [illegible] for refusing & continuing to refuse to take a cellmate. The grievance denial states this inmate agreed to take a cellmate! This makes no difference because my grievance is I was "forced" into a cell with an inmate who is serving a Life Sentence + 110 years and did indicate numerous times he would not take a cellmate! "CO I Davis" or any other "CO" should not have placed my life in danger especially while I was on "AC" status because the Security Team + P.R.C. denied me not being safe if I was released into population (unable to protect my safety!!) I was intentionally placed in this "deadly situation" for my being unable to [illegible] my attackers in a prior assault while in "SCI-[illegible]". The relief I am seeking is for criminal charges, civil [illegible] [illegible] for "Negligence", "Retaliation" for "Prior Grievances" and "Failing To Protect" my safety by forcing me into a deadly [illegible]

To DC-14 CAR only ☐

To DC-14 CAR and DC-15 IRS ☐

Staff Member Name __________ / __________ Date __________
Print Sign

Revised July 2000

(1 of 2)

(2 of 2)

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

INSTRUCTIONS
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
"Superintendent [illegible]" "Grievance Appeal" "Business Office"

2. Date:
8-19-09

3. By: (Print Inmate Name and Number)
Mr. Damien Mikell DM-6339

Damien Mikell
Inmate Signature

4. Counselor's Name
"Mr. [illegible]"

5. Unit Manager's Name
"Mr. [illegible]"

6. Work Assignment
N/A

7. Housing Assignment
"DA/AC" - "Cell - 1032"

8. Subject: State your request completely but briefly. Give details.

situation. I am asking whether monetary damages / compensation for punitive & compensatory damages I am entitled to under my civil and/or criminal law for my physical, emotional, but not importantly, mental anguish & pain.

Cordially Yours,
Damien Mikell
Mr. Damien Mikell

Response: (This Section for Staff Response Only)

To DC-14 CAR only ☐

To DC-14 CAR and DC-15 IRS ☐

Staff Member Name ____________ / ____________ Date ____________
Print Sign

Revised July 2000

(2 of 2)

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**State Correctional Institution at Rockview**
(814) 355-4874
April 10, 2009

SUBJECT:   Appeal to Grievance #263943

TO:        Damien Mikell, DM-6559
           Building D/AC

FROM:      Franklin J. Tennis
           Superintendent

The response from Major Snedeker is accurate and complete.  The inmate already in the cell in which you were placed did not have any official separations from anyone; nor did he indicate he would not take a cell partner nor that he would harm any inmate placed in his cell.  You do not have a Z code to require a single cell.  You did express concern over being placed in the cell with the other inmate but as stated above, there was no evidence nor documentation to make staff believe you would be in any danger in this cell.  Staff cannot anticipate every inmate's actions.

It is unfortunate you were punched but appropriate review of this situation was done prior to placing you in the cell and further, staff responded promptly to remove you from the cell when you were punched.

Your appeal is denied.

FJT:tlk

c:    Deputy Thompson – Major Snedeker
      DC-15
      Mr. Rackovan

Mr. Damien Mitchell DM-6559
Box-A
Bellefonte, Pa. 16823-0820

Chief Grievance Officer
Department of Corrections
P.O. Box-598
Camp Hill, Pa. 17001-0598

April 17, 2009

Chief Grievance Officer:

Good day. I am writing to appeal grievance number # ROC-263948-09, after being denied by the Superintendent at SCI-Rock View, Franklin J. Tennis, on the rationale, "Staff cannot anticipate every inmate's actions."

I am appealing on the basis that, although, staff may not anticipate every inmate's actions, staff members have to be responsible and held accountable for their own actions.

I was knowingly and intentionally put into a very dangerous and deadly situation by being placed in the cell with an inmate who was on AC status after completing "RHU" (Disciplinary time) for refusing a cell-partner and putting on record he would harm bodily the next cellmate he received, as a direct retaliatory act for my perceived "lack of cooperation with both, the Administration and Security Team at SCI-Rock View, in a prior investigation surrounding my being the victim in another vicious and deadly assault, where I was stabbed a multiple amount of times.

I expressed concern over being placed in the cell with this inmate for good reason because while being housed on "AC" status for my own protection from others, it was rumored that this inmate already stated to the Administration and Security Team that he was not taking a cell-mate and the next cell-mate he received he was going to kill them. This inmate has multiple life sentences with 100+ years of time to serve.

Contrary to Major Snedeker investigation and assessment, this inmate is documented on record as to refusing a cell-mate by way of being written up for refusing to take a cell-mate, writing request slips to counselors, psychologist, and psychiatrist informing them all of his mental state and the harm he will do to an

cellmate he received as well as writing and verbally informing both, the Program Review Committee and the Security Staff that he would not take a cellmate and he would harm badly the next cellmate he received.

The Administration has once again attempted to back pedal and cover-up their intentional and retaliatory acts of placing me in a very dangerous and deadly situation by stating on my appeal denial rationale from Superintendent Tennis, that was investigated and prepared by Major Snedeker, that I was punched and it was unfortunate I was only punched when it was acknowledged by the same investigating staff member, Major Snedeker, that I was being assaulted and staff members had to come into the cell and remove this inmate off of me, untie my hands from behind my back and extinguish a fire inside this cell that almost burned me alive. It is very, very, clear that I am being retaliated against as well as intentionally placed in dangerous situations and extreme measures are being taken to cover-up such deliberate actions.

The relief I am asking is that someone investigate this grievance appeal I have submitted as well as investigate overall my well being while being housed in SCI-RockView to make sure I am not further retaliated against and intentionally put into any other dangerous or deadly situations again. I am also seeking as relief that any criminal charges & civil claims possible be brought against the Administration of SCI-RockView for "Negligence and Intentional Retaliation" for Poor Prison Conditions and perceived "Lack of Cooperation".

Cordially Yours,

Damien Mitchell

Mr. Damien Mitchell

**FINAL APPEAL DECISION**
**Secretary's Office of Inmate Grievances & Appeals**
Pennsylvania Department of Corrections
P.O. Box 598, 2520 Lisburn Road
Camp Hill, PA 17001-0598

This serves to acknowledge receipt of your appeal to final review for the grievance noted below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the grievance officer's response, your appeal to the facility manager, the facility manager's response, the issues you raised to final review, and (when applicable) any revised institutional responses required as a result of a subsequent remand action by this Office. As necessary, input from appropriate Central Office Bureaus (e.g., Health Care Services, Chief Counsel, Office of Professional Responsibility, etc.) may have been solicited in making a determination in response to your issue as well.

| | | | |
|---|---|---|---|
| Inmate Name: | Damien Mikall | Inmate Number: | DM6559 |
| SCI Filed at: | Rockview | Current SCI: | Rockview |
| Grievance #: | 263943 | | |
| Publication (if applicable): | | | |

**Decision:** **Uphold Response (UR)**

*The original or revised responses provided at the institutional level are reasonable and appropriate in accordance with Department of Corrections' policy and procedure. Accordingly, your final appeal is denied.*

**Response:** *Frivolous* ☐

You have failed to provide any evidence that staff knowingly and intentionally placed you in a cell with another inmate who you claimed stated that he was going to harm the next cellmate he received. A review of the record reveals that the other inmate did not have any official separations from anyone and he did not indicate that he would not take a cellmate. The record further reveals that the other inmate agreed to have you put in the cell. It appears that you had some concerns about being placed in the cell, but you eventually agreed to be placed in the cell. It is unfortunate that an incident took place after you were placed in the cell with the inmate. However, staff cannot anticipate what inmates will do in all situations. As there was no evidence or documentation to make staff believe that you would be in any danger if placed in the cell, your claims that staff placed you in the cell knowing you may be harmed are unsubstantiated. There is no evidence of negligence by SCI Rockview staff. Your request for monetary compensation is denied.

| | |
|---|---|
| Signature: | Dorina Varner *Dorina Varner* |
| Title: | Chief Grievance Officer |
| Date: | 05/28/09 |

DLV/LLS

cc: DC-15/Superintendent Tennis
Grievance Office

Exh.B

AFFIDAVIT of Statement

To whom it may concern: I, James Cole, do hereby state that the Following is my account of facts and information I know in Regards to ANL Gregory Middleton And Damien McKell. this statement is Given without threat coercion or Promise of Reward.

I Know "Fatty" and "Sawud". "Sawud" is Gregory Middleton and "Fatty" is Damien McKell. "Fatty" was my celly in the hole After he was stabbed in 2008 November. I Knew "Sawud" from being in the Jail with him. We were on the same Housing Unit from Summer of '06 to Around Fall of 2007. "Sawud" was always in A Single Cell due to the Guards Knowing he was wild. We often Played Chess Together and one day he was venting about how mad he was that they (the DOC/Jail) was taking People's Z-codes and he told me that he was Going to "Set an example and Fuck somebody up" if they try to take his Z-code. then Sometime in the later Part of 2008 I heard he went to the hole for threatening A Guard because they tried to take him out of his Single Cell. while I was in the hole late Feb 2009. I heard "Sawud" Assaulted an inmate they tried to Put in his cell while in the A.C. I later on found out that "Fatty" was the one who was Assaulted.

I James Cole hereby verifies that the Above mentioned is true And correct to the best of my Knowledge and Belief. I am Aware that I am Subject to Punishment for unsworn falsification to Authorities Pursuant to 18 PA C.S. 4904

5/1/10

[signature]
JAMES COLE

(1 of 2)

**Postage Order And Receipt**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
S.C.I. ROCKVIEW

**1. REQUISITIONING INMATE**

| DOC NUMBER | NAME (PRINT) | HOUSING UNIT | DATE |
|---|---|---|---|
| DM-6389 | Mr. Damien Mitchell | D-241-Cell | 2-15-11 |

**2. PERSON TO WHOM MAIL IS SENT**

NAME: Clerk of Courts
Address: U.S. District Courthouse
The Federal Building
P.O. Box-608
Williamsport, Pa. 17701

Check if applicable

✓ Regular first class mail $
___ Certified return receipt $
___ Certified only $
___ United Parcel Service (Pkg) $
___ Others (air) $

**TOTAL AMOUNT$** 520

| 3. INMATE'S SIGNATURE | 4. OFFICIAL APPROVAL |
|---|---|
| Damien Mitchell | 14 FEB 11 [signature] |

**5. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE |
|---|---|
| $ | |

White Copy – Inmate Accounting    Pink Copy – Inmate

(2 of 2)

**Postage Order And Receipt**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
S.C.I. ROCKVIEW

**1. REQUISITIONING INMATE**

| DOC NUMBER | NAME (PRINT) | HOUSING UNIT | DATE |
|---|---|---|---|
| DM-6389 | Mr. Damien Mitchell | D-241-Cell | 2-14-11 |

**2. PERSON TO WHOM MAIL IS SENT**

NAME: Clerk of Courts
Address: U.S. District Courthouse
The Federal Building
P.O. Box-608
Williamsport, Pa. 17701

Check if applicable

✓ Regular first class mail $
___ Certified return receipt $
___ Certified only $
___ United Parcel Service (Pkg) $
___ Others (air) $

**TOTAL AMOUNT$** 520

| 3. INMATE'S SIGNATURE | 4. OFFICIAL APPROVAL |
|---|---|
| Damien Mitchell | 14 FEB 11 [signature] |

**5. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE |
|---|---|
| $ | |

White Copy – Inmate Accounting    Pink Copy – Inmate

Mr. Damien Mitchell DH-6339
Box-A
Bellefonte, Pa. 16823-0820

INMATE MAIL
PA DEPT OF
CORRECTIONS

U.S. District Courthouse
Federal Building
P.O. Box 608
Williamsport, PA 17701

ATTEMPTED NOT KNOWN

ANK 241

D

PRIORITY MAIL
UNITED STATES POSTAL SERVICE
www.usps.gov
LABEL 107R, OCT 1997

(1 of 2)

Mr. Damien Mikell DM-6339
Box-A
Bellefonte, Pa. 16823-0820

INMATE MAIL
PA DEPT OF
CORRECTIONS

241

ATTEMPTED
NOT KNOWN
PRIORITY
MAIL
UNITED STATES POSTAL SERVICE
www.usps.gov
LABEL 107R, OCT 1997

...District Courthouse
...Building
...
Williamsport, Pa. 17701

(2 of 2)

(1 of 2)

# Postage Order And Receipt

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
S.C.I. ROCKVIEW

**1. REQUISITIONING INMATE**

| DOC NUMBER | NAME (PRINT) | HOUSING UNIT | DATE |
|---|---|---|---|
| DM-6339 | Mr. Damien Mikell | D-241-Cell | 2-22-11 |

**2. PERSON TO WHOM MAIL IS SENT**

NAME: U.S. District Courthouse
Address: 235 N. Washington Ave.
P.O. Box - 1148
Scranton, Pa. 18501

NSF

Check if applicable

✓ Regular first class mail $____
____ Certified return receipt $____
____ Certified Only $____
____ United Parcel Service (Pkg) $____
____ Others (air) $____

**TOTAL AMOUNT $**____

3. INMATE'S SIGNATURE Damien Mikell

4. OFFICIAL APPROVAL Bldg. D 22 FEB 11 Approval Signature

**5. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE |
|---|---|
| $ | |

White Copy – Inmate Accounting Pink Copy – Inmate

(2 of 2)

# Postage Order And Receipt

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
S.C.I. ROCKVIEW

**1. REQUISITIONING INMATE**

| DOC NUMBER | NAME (PRINT) | HOUSING UNIT | DATE |
|---|---|---|---|
| DM-6339 | Mr. Damien Mikell | D-241-Cell | 2-22-11 |

**2. PERSON TO WHOM MAIL IS SENT**

NAME: U.S. District Courthouse
Address: 235 N. Washington Ave.
P.O. Box - 1148
Scranton, Pa. 18501

NSF

Check if applicable

✓ Regular first class mail $____
____ Certified return receipt $____
____ Certified Only $____
____ United Parcel Service (Pkg) $____
____ Others (air) $____

**TOTAL AMOUNT $**____

Bldg. D Approval

3. INMATE'S SIGNATURE Damien Mikell

4. OFFICIAL APPROVAL 22 FEB 11 Date Signature

**5. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE |
|---|---|
| $ | |

White Copy – Inmate Accounting Pink Copy – Inmate

| Postage Order And Receipt | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS S.C.I. ROCKVIEW |
|---|---|

**1. REQUISITIONING INMATE**

| DOC NUMBER | NAME (PRINT) | HOUSING UNIT | DATE |
|---|---|---|---|
| DM-6359 | Mr. Damien Mikell | D-241-Cell | 2-14-11 |

**2. PERSON TO WHOM MAIL IS SENT**

NAME: Ms. Jennifer Clark
Address: Pennsylvania Institutional Law Project
718 [illegible] Street, Suite 304 S.
Philadelphia, Pa. 19106

Check if applicable

✓ Regular first class mail $______

_____ Certified return receipt $______

_____ Certified only $______

_____ United Parcel Service (Pkg) $______

_____ Others (air) $______

**TOTAL AMOUNT$** 275

| 3. INMATE'S SIGNATURE | 4. OFFICIAL APPROVAL |
|---|---|
| Damien Mikell | 2/14/11 [signature] |

**5. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE |
|---|---|
| $ | |

White Copy – Inmate Accounting     Pink Copy – Inmate





SCI ROCKVIEW LIBRARY

**POLICY and PROCEDURES**
**Commonwealth of Pennsylvania • Department of Corrections**

| Policy Subject: | | Policy Number: |
|---|---|---|
| Inmate Mail and Incoming Publications | | DC-ADM 803 |
| **Date of Issue:** April 18, 2008 | **Authority:** Signature on File Jeffrey A. Beard, Ph.D. | **Effective Date:** April 28, 2008 |

## I. AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, 71 P.S. §§61, 66, 186, and 310-1, Act of April 9, 1929, P.L. 177, No. 175, as amended.

STATE CORRECTIONAL INSTITUTION AT ROCKVIEW FOR USE IN LIBRARY

## II. APPLICABILITY

This policy is applicable to all facilities operated under the jurisdiction of, or conducting business with the Department of Corrections.

## III. POLICY

It is the policy of the Department to allow an inmate access to communication with members of society through the established public mail system,[1] to inspect mail, determine the types of publications allowed, and to review publications intended for inmate. Restrictions shall be related directly to facility order and security, public safety, and obscenity laws and statutes.[2]

## IV. PROCEDURES

All applicable procedures are contained in the procedures manual that accompanies this policy document.

ROCKVIEW LIBRARY STATE CORRECTIONAL INSTITUTION AT ROCKVIEW FOR USE IN LIBRARY

[1] 4-4492
[2] 4-4487, 4-4488, 4-4490

(4) the court, case/docket number, caption and type of case.

b. The Business Manager/designee shall review the information contained in the request slip and verify that the inmate has insufficient funds to purchase the needed material.

c. The Business Manager/designee shall respond to the request within five working days of receipt.

AT ROCKVIEW
FOR USE IN LIBRARY

d. Upon approval, the inmate shall be provided free of charge:

(1) the use or permanent possession of a common type of stick ball pen; and

(2) a packet of 50 sheets of clean paper and five sheets of carbon paper. Paper must be 8 ½" x 11" in size. Should the quantity of paper or carbon paper provided prove to be insufficient, the inmate may submit a request for one more additional packet per month.

2. Postage and Copying

SCI ROCKVIEW LIBRARY

a. Anticipated Postage

(1) An indigent inmate may anticipate on his/her account, postage for legal mail, to include Exhaustion of Grievance and copying charges of up to $10.00 per month.[12] Under no circumstances, shall the Business Manager/designee approve requests in excess of $10.00 per month. An inmate is responsible for managing his/her funds and monthly postage allowance to meet his/her legal needs.

(2) The Business Manager/designee shall respond to the request within five working days of receipt.

(3) After all deductions are taken in accordance with Department policy **DC-ADM 005, "Collection of Inmate Debts"** any money received in an inmate's account shall be used to satisfy the postage debt and copying fees.

b. Postage Limitations

SCI ROCKVIEW LIBRARY

An inmate will be permitted to anticipate the deposit of funds into his/her account for regular first-class postage only except that:

(1) a "Petition for Review" to respondents is the only legal document required to be served by certified mail, return receipt;

(2) an inmate may use, but is not required to use, certified mail, return receipt to file a "Petition for Review" with the Court;

STATE CORRECTIONAL INSTITUTION ROCKVIEW
AT ROCKVIEW
FOR USE IN LIBRARY LIBRARY

[12] 4-ACRS-6A-06



Mr. Damien Mikell DM-6559
Box-A
Bellefonte, Pa. 16823-0820

RECEIVED
SCRANTON
MAR 0 1 2011
PER ____________
DEPUTY CLERK

INMATE MAIL
PA DEPT OF
CORRECTIONS

$ 002.0

Clerk of Courts
U.S. District Courthouse
235 N. Washington Ave.
P.O. Box-1148
Scranton, Pa. 18501

**FORMS TO BE COMPLETED BY PRISONERS FILING A CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983 or 28 U.S.C. § 1331**

**COVER SHEET**

THIS COVER SHEET CONTAINS IMPORTANT INFORMATION ABOUT FILING A COMPLAINT AND YOUR OBLIGATIONS IF YOU DO FILE A COMPLAINT. READ AND COMPLETE THE COVER SHEET BEFORE YOU PROCEED FURTHER.

******************************************************************************

The cost for filing a civil rights complaint is $350.00.

If you do not have sufficient funds to pay the full filing fee of $350.00 you need permission to proceed in forma pauperis. However, the court will assess and, when funds exist, immediately collect an initial partial filing fee of 20 percent of the greater of:

1) the average monthly deposits to your prison account for the past six months; or

2) the average monthly balance in your prison account for the past six months.

Thereafter, the institution in which you are incarcerated will be required to make monthly payments of 20% of the preceding month's deposits credited to your account until the entire filing fee is paid.

**CAUTION: YOUR OBLIGATION TO PAY THE FULL FILING FEE WILL CONTINUE REGARDLESS OF THE OUTCOME OF YOUR CASE, EVEN IF YOUR COMPLAINT IS DISMISSED BEFORE THE DEFENDANTS ARE SERVED.**

******************************************************************************

1. You shall file a complaint by completing and signing the attached complaint form and mailing it to the Clerk of Court along with the full filing fee of $350.00. (In the event attachments are needed to complete the allegations in the complaint, no more than three (3) pages of attachments will be allowed.) If you submit the full filing fee along with the complaint, you DO NOT have to complete the rest of the forms in this packet. **Check here if you are submitting the filing fee with the complaint form.** ____

2. If you cannot afford to pay the fee, you may file a complaint under 28 U.S.C. § 1915 without paying the full filing fee at this time by completing the following: (1) Complaint Form; (2) Application To Proceed In Forma Pauperis; and (3) Authorization Form. <u>You must properly complete, sign and submit all three standard forms or your complaint may be returned to you by the Clerk of Court</u>. **Check here if you are filing your complaint under 28 U.S.C. § 1915 without full prepayment of fees.** ✓

**Please Note:** If your case is allowed to proceed and you are awarded compensatory damages against a correctional facility or an official or agent of a correctional facility, the damage award will first be used to satisfy any outstanding restitution orders pending. Before payment of any compensatory damages, reasonable attempts will be made to notify the victims of the crime for which you were convicted concerning payment of such damages. The restitution orders must be fully paid before any part of the award goes to you.

**DO NOT DETACH THE COVER SHEET FROM THE REST OF THE FORMS**