IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAMIEN MIKELL,<br>    Plaintiff<br><br>v.<br><br>SHIRLEY R. MOORE et al,<br>    Respondents | :<br>:<br>:   No. 1:11-CV-388<br>:<br>:   Judge John E. Jones, III<br>:<br>:<br>:   (Electronically Filed) |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF CASE

*Pro se* plaintiff, Damien Mikell, is an inmate incarcerated at the State Correctional Institution in Waynesburg, Pa (SCI-Greene). SMF ¶ 1. From October 17, 2006 to July 17, 2012, Plaintiff was incarcerated at the State Correctional Institution in Bellefonte, Pa (SCI-Rockview). SMF ¶ 3. The defendants are current and former employees of the Department of Corrections (DOC) at SCI-Rockview, Dale Davis, Lynn M. Eaton, Craig Harpster, Robert Marsh, Shirley R. Moore-Smeal, Melinda Smith, Franklin J. Tennis, Brian Thompson, and Robert Vance. SMF ¶ 2. In this civil action brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, Plaintiff seeks compensation for an alleged violation of

his Eighth and Fourteenth Amendment rights following an altercation involving Plaintiff's cellmate, Gregory Middleton. (Doc. 1)

Plaintiff filed his complaint on March 1, 2011. (Doc. 1). After being granted leave to extend time to answer the complaint, Commonwealth Defendants filed an answer on August 5, 2011. (Doc. 5). A lengthy discovery period ensued with extensions requested by and granted to both parties. Doc. 17-18, 20, 22, 25-26, 29-33, 35, 38). Plaintiff's motion to compel discovery, filed August 8, 2012, remains outstanding. (Doc. 43, 44). Commonwealth Defendants have moved for summary judgment. (Doc. 59). The Court having granted the Commonwealth Defendants' motion to extend time to file supporting documents to their motion for summary judgment, Commonwealth Defendants now file this brief in support of their motion for summary judgment along with the statement of material facts.

## STATEMENT OF FACTS

A Statement of Material and Undisputed Facts (SMF) was submitted under separate cover and, in the interest of brevity, will not be repeated here. The Defendants will cite to it at appropriate points in the argument section of this brief.

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment if he or she shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See*

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). Parties moving for, or opposing, summary judgment must support their position by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials. *Id.* The party opposing summary judgment may not rely on statements in briefs, *Smith v. Kyler,* 295 Fed. Appx. 479, 481 (3d Cir. 2008)(per curiam)(citing *Pastore v. Bell Tel. Co. of Pennsylvania,* 24 F.3d 508, 511-12 (3d Cir. 1994)), but his evidence may be believed and all justifiable inferences are to be drawn in his favor. *Colwell v. Rite-Aid Corp.,* 602 F.3d 495, 501 (3d Cir. 2010)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)).

Against this backdrop, defendants turn to a discussion of plaintiff's claims.

## QUESTIONS PRESENTED

I. **ARE PLAINTIFF'S CLAIMS BARRED BY THE STATUTE OF LIMITATIONS?**

II. **ARE DEFENDANTS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EIGHTH AMENDMENT CLAIM?**

III. **ARE DEFENDANTS ENTITLED TO SUMMARY JUDGMENT WHEN THEY HAD NO PERSONAL INVOLVEMENT?**

IV. **ARE DEFENDANTS ENTITLED TO QUALIFIED IMMUNITY FOR THEIR ACTIONS?**

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS WHEN HE FILED HIS COMPLAINT MORE THAN TWO YEARS AFTER THE INCIDENT.

The statute of limitations for a § 1983 action is governed by the limitations period for personal injury actions of the state in which the alleged violations occurred. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *McDowell v. Del. State Police*, 88 F.3d 188, 190 (3d Cir. 1996). In Pennsylvania, the statute of limitations for personal injury claims is two years. Pa. Cons. Stat. § 5524(2) (2003). Therefore, the relevant statute of limitations period for Plaintiff's § 1983 claims is two years. *Cora v. Hanover Borough Police Dept.*, 1:11-CV-1067, 2011 WL 6176738 *4 (M.D. Pa., Dec. 12, 2011)(citing *Kost v. Kozakiewicz*, 1F.3d 176, 189-90 (3d Cir. 1993)). The issue of when a § 1983 action accrues is controlled by federal law. *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998). Under federal law, a § 1983 claim accrues when the plaintiff knows, or has reason to know, of the injury that forms the basis of the action. *Sameric Corp. of Del. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

Plaintiff's claims accrued on February 20, 2009, when the incident with his cellmate, Gregory Middleton, occurred. At that time, Plaintiff knew or had reason

4

to know of the injury which forms the basis of this law suit. However, Plaintiff did not timely file his lawsuit under the two year statute of limitations. Applying the mailbox rule, Plaintiff's complaint was properly filed on February 23, 2011, three days after the statute of limitations had run.

In *Houston v. Lack*, 487 U.S. 266 (1988), the Court created an exception for pro se inmates to the general rule that a complaint is considered filed received by the clerk of courts. This exception, called the "mailbox rule," states that a document is considered filed the moment the inmate delivers it to prison officials to forward to the court. *Id.* at 276. The purpose of the mailbox rule is to protect inmates from delays caused by prison officials or the postal service which are outside of the inmate's control. *Id.* at 271.

The Third Circuit has refused to extend the mailbox rule where delays in filing are caused by the inmate. *See Santos v. Gainey*, 417 F. App'x 109, 111 (3d Cir. 2010) (*per curiam*) (not published); *Smith v. Evans*, 853 F.2d 155, 161 (3d Cir. 1988). In *Smith*, an inmate served a Rule 59(e) motion ten days late. *Smith*, 853 F.2d at 157. The *Smith* Court, noting the harsh outcome, refused to extend the mailbox rule where application of the rule would not support its purpose of protecting inmates from delays caused by prison officials. *Id.* In *Santos*, an inmate filed his § 1983 complaint regarding two prison assaults one month beyond the two year statute of limitations provided in Pa. Cons. Stat. § 5524(2). *Santos*, 417 F.

App'x at 110. Santos argued that the filing of his complaint was hindered by actions of prison officials in providing information required for Santos' *in forma pauperis* application. *Id.* The Court upheld the District Court's dismissal of Santos claim, concluding that Santos did not exercise the required diligence in pursuing his claim when he waited almost waited almost two years before initiating the process at the prison for completing the *in forma pauperis* application. *Id.* at 111.

Similarly, the Fifth Circuit has refused to extend the mailbox rule where delay is caused by the inmate, not prison officials or the postal service. In *Dison v. Whitley*, 20 F.3d 185 (5th Cir. 1994), the Court refused to apply the mailbox rule to an inmate's delivery of an unposted notice of appeal to prison officials, and to his delivery to an agent outside the prison. The *Dison* court noted that fault for the late filing lay with the inmate, not prison officials. *Id.* The court stated that the mailbox rule "did not relieve a prisoner of the responsibility of doing all that he or she can reasonably do to ensure that documents are received by the clerk of court in a timely manner. *Id.* (quoting *Thompson v. Rasberry*, 993 F.2d 513, 514 (5th Cir. `1993)).

Here, applying the mailbox rule, Plaintiff's complaint was filed on February 23, 2011, more than two years after the incident in question and, therefore, after the statute of limitations had run. SMF ¶ 29, Pa. Cons. Stat. § 5524(2). Plaintiff

appears to have attempted to file his complaint prior to the statute of limitations having run; however, the mailbox rule is inapplicable to these attempts. *Dison*, 20 F.3d 18; *Santos*, 417 F. App'x at 111. The delay in Plaintiff's two prior attempts at filing was caused not by prison officials or the postal service, but by Plaintiff when he provided an incorrect address and lacked sufficient funds for postage. Application of the mailbox rule to Plaintiff's prior attempts at mailing his complaint would be improper where it would contradict the rule's purpose. Id.

On February 15, 2011, Plaintiff submitted two items of mail addressed to the "U.S. District Courthouse, The Federal Building, P.O. Box – 608, Williamsport, Pa. 17701," along with attached Postage Order and Receipt form. SMF ¶ 25. The total cost of mailing these two items along with an item submitted on February 14, 2011, $13.15, was deducted from Plaintiff's prison account on February 16, 2011. SMF ¶ 26. This left $0.05 remaining in Plaintiff's account. *Id.* Plaintiff attached these Postage Order and Receipt forms along with photocopies of the envelopes to his complaint, presumably to demonstrate his attempt at timely filing. Doc. 1. These document, provided by Plaintiff, show that he incorrectly addressed his initial mailing to the Court, and, thereby, failed to do all that he reasonably could do to ensure that documents are received by the clerk of court in a timely manner. Doc. 1; *Santos*, 417 F. App'x at 111. This delay in mailing was caused by Plaintiff,

7

not prison officials or the postal service. Therefore, the mailbox rule is inapplicable.

Plaintiff next attempted to mail his complaint on February 22, 2011, when he submitted two items of mail addressed to "U.S. District Courthouse, 235 N. Washington Ave., P.O. Box – 1148, Scranton, Pa. 18501," along with attached Postage Order and Receipt forms. SMF ¶ 27. Both item were marked "NSF" by the Mailroom, indicating that Plaintiff had insufficient funds in his prison account to cover postage.[1] *Id.* Because Plaintiff did not meet the DC-ADM 803 definition of indigent, these items were returned to Plaintiff on February 23, 2011. *Id.* Following receipt of a Form DC-135A from Plaintiff, Francis M. Dougherty, the Business Manager at SCI-Rockview, reviewed Plaintiff's prison account and verified that he was not, in fact, indigent. SMF ¶ 28. On March 1, 2011, Mr. Dougherty responded to Plaintiff's DC-135A and sent him a letter explaining that his legal mail had been returned because his account balance was $0.05 and he was not indigent. Id. Plaintiff has attached a copy of these Postage Order and Receipt forms to his complaint. Doc. 1. These documents show the Mailroom's notation of NSF, demonstrating that Plaintiff had insufficient funds for postage and,

---

[1] Inmates are permitted to mail items weighing over one ounce at their own expense. SMF ¶ 16. Postage is charged to the inmate's prison account. *Id.* ¶ 18. If an inmate has insufficient funds to cover the postage, his mailing is marked "NSF," meaning not sufficient funds, by the Mailroom. *Id.* ¶ 18-19. Legal mail is further checked to see if the inmate in indigent. *Id.* ¶ 20-22. An indigent inmate is defined as having "combined balances of his/her facility account and any other accounts [of] $10.00 or less at all times during the 30 days preceding the date on which the inmate submits a request." *Id.* ¶ 22. An indigent inmate is permitted to anticipate postage for legal mail. *Id.* If an inmate is not indigent, the mail is returned to him. *Id.* ¶ 23.

8

thereby, failed to do all that he reasonably could do to ensure that documents are received by the clerk of court in a timely manner. Doc. 1; *Santos*, 417 F. App'x at 111. This delay in mailing was caused by Plaintiff, not prison officials or the postal service. Therefore, the mailbox rule is inapplicable.

On February 23, 2011, Plaintiff finally submitted his complaint to the Mailroom with a proper address and postage was charged to his prison account. SMF ¶ 29. This mailing, the first addressed to "Clerk of Courts, U.S. District Courthouse, 235 N. Washington Ave., P.O. Box – 1148, Scranton, Pa. 18501," appears to have contained Plaintiff's complaint filed on March 1, 2011. Id.; Doc. 1. However, as of February 23, 2011, the two year statute of limitations had already run for the February 20, 2009 incident. Id.; Pa. Cons. Stat. § 5524(2). Therefore, even applying the mailbox rule, Plaintiff's complaint is past the statute of limitations and cannot be considered by this Court.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT ESTABLISH DELIBERATE INDIFFERENCE TO A BASIC HUMAN NEED.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811

9

(1994); *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). Under the Eighth Amendment prison officials have a duty to "take reasonable measures ... to protect prisoners from violence at the hands of other prisoners." *Farmer,* 511 U.S. at 832-33. A prison official may be held liable under the Eighth Amendment where he or she knew that an inmate "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Id.* at 847. Negligence, or the lack of due care under the circumstances, is insufficient to support a claim that a prison official failed to protect the inmate. *Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

To establish that a prison official violated the Eighth Amendment by failing to prevent harm an inmate must, therefore, show (1) that the prison conditions posed a substantial risk of serious harm, and (2) that the prison official was deliberately indifferent to the inmate's health or safety. *Farmer,* 511 U.S. at 847. In determining whether prison conditions posed a substantial risk of serious harm, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. *Mitchell v. Dodrill,* 696 F. Supp. 2d 454, 466 (M.D. Pa. 2010) (citing *Rhodes v. Chapman,* 452 U.S. 337, 362–63, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)).

Deliberate indifference is defined as the reckless disregard of a known, excessive risk of serious harm to an inmate's health or safety. *Farmer,* 511 U.S. at 836. A prison official acts with deliberate indifference when he is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ...draw[s] the inference." *Id.* at 837. "[T]his element of deliberate indifference must be viewed from [the prison official's] perspective at the time in question, not with hindsight's perfect vision." *Wise v. Ranck,* 1:07-CV-01899, 2008 WL 4861974 *3 (M.D. Pa. Nov. 6, 2008)(quoting *Jackson v. Everett,* 140 F.3d 1149, 1152 (8th Cir.1998)).

In *Wise*, this Court found that mere assertions by an inmate, unsupported by evidence, are insufficient to support a claim that prison officials failed to protect an inmate from harm at the hands of another inmate. *Id.* at *4. Wise asserted that his former cellmate, White, was territorial and had a history of difficulties getting along with cell mates. *Id.* Wise further asserted that White had a history of violence against other inmates and had previously attacked an inmate. *Id.* Wise presented no evidence that prison officials knew White posed a substantial risk of harm to Wise or that prison officials drew that inference from the facts he presented. *Id.*

Similarly, here Plaintiff has provided no evidence beyond his unsupported assertions that prison officials knew Middleton posed a substantial risk of harm to

11

Plaintiff or that prison officials were able to draw that inference from the facts presented.[2] When deposed, Plaintiff attempted to support the vast majority of his assertions with jailhouse gossip.[3] Plaintiff contradicted his assertion that Middleton was on single cell status and did not have cellmates from 2004 to February 2009.[4] Plaintiff also contradicted his statement that he told Defendant Davis that he was afraid Middleton would harm him if they were placed in the same cell.[5] Plaintiff stated that he possessed the PRC report referenced in paragraphs 35 to 37 of his complaint, but has failed to attach that document.[6] Plaintiff did attach an affidavit of a fellow inmate stating that Middleton threatened to set an example of a cellmate if given one; however, Plaintiff fails to show how prison officials would be aware of a casual conversation between two inmates. Doc. 1 ¶ 30; see also Dep. 39:9-40:3. Even if Plaintiff overheard Middleton tell Defendant Harpster that he would kill a cellmate if given one, the court has acknowledged that threats by inmates are common and do not serve to impute

---

[2] While Plaintiff is correct that Middleton was incarcerated after receiving a life sentence on March 7, 2003, for attempted murder, and presumably, Middleton has a violent past, the same could be said for the vast majority of those incarcerated. SMF ¶ 5; Doc. 1, ¶ 23.

[3] Mikell stated that he heard stories about Middleton's assaults on staff and inmates. SMF ¶ 31(a). Mikell "heard" that Middleton went to the hole for refusing to take a cellmate. SMF ¶ 31(b). Mikell "heard" that Middleton was placed on DC status for threatening a C.O. who attempted to give him a cellmate. SMF ¶ 31(c); see also Wise, 2008 WL 4861974 *5 (threats by inmates are common and do not serve to impute actual knowledge of a substantial risk of harm).

[4] When deposed, Plaintiff stated that he was unaware if Middleton had any separations (SMF ¶ 31(d)), that Middleton might have had a cellmate during this time (SMF ¶ 31(e)), and that Middleton had a cellmate in 2006 (Id.). Plaintiff did state that he knew Middleton wanted a Z code (SMF ¶ 31(f)), but he could provide evidence of that Z code.

[5] When deposed, Plaintiff said that he told Defendant Davis he was not going in the cell because Middleton did not want a cellmate, and that he was not refusing to go in the cell. SMF ¶ 8.

[6] Plaintiff stated when deposed that Middleton had given him the PRC report cited in paragraphs 35-37 of his complaint. SMF ¶ 31(g).

actual knowledge of a substantial risk of harm. Doc. 1 ¶ 31; *see Wise*, 2008 WL 4861974 *5. Finally, Plaintiff states that a letter from Defendant Moore-Smeal to Middleton's mother contains an acknowledgement of Middleton's single cell status; however, a cursory review of this letter shows that it contains no such acknowledgement. Doc. 1 ¶¶ 33-34; SMF ¶ 4.

Plaintiff has presented no evidence to support his assertions that prison officials knew Middleton posed a substantial risk of harm to him, or that prison officials drew that inference from the facts he presented. Plaintiff's unsupported assertions are insufficient to support a claim that prison officials failed to protect an inmate from harm at the hands of another inmate.

### III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WHEN THEY HAD NO PERSONAL INVOLVEMENT.

To sustain a claim under § 1983, "a plaintiff must show that each and every defendant was "personal[ly] involve[d]" in depriving him of his rights. *Evancho v. Fischer,* 423 F.3d 347, 353 (3d Cir. 2005). Liability can only be imposed against a defendant if he played an "affirmative part" in the complained of misconduct. *Chincello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). Additionally, "[t]here is no liability for a supervising or reviewing defendant based on theories of *respondeat superior* or vicarious liability." *Id.* Personal involvement may be shown "through allegations of personal direction or of actual knowledge and acquiescence." *Evancho*, 423 F.3d at 353 (quoting *Rode v. Dellarciprete*, 854 F.2d 1195, 1207 (3d

13

Cir. 1988)). To support these allegations, the complaint must "name the individuals responsible, the conduct, the time, and the place of the incident that deprived a plaintiff of his civil rights." *Id.* A mere hypothesis that a defendant had personal knowledge is insufficient to support a § 1983 cause of action. *Kirk v. Roan*, 2006 WL 2645154, at 3 (M.D. Pa. Sept. 14, 2006).

Here, Plaintiff has failed to demonstrate personal involvement on the part of any Defendant. Plaintiff's allegations against Defendants Marsh and Tennis are purely supervisory, and as such cannot stand. Doc. 1, ¶ 57-75; *Chincello*, 805 F.2d at 133. Similarly, Plaintiff states in his complaint that his claims against Eaton and Vance are based on their supervisory capacity. Doc. 1, ¶¶ 88, 89.

Regarding Defendants Marsh, Thompson, and Smith, Plaintiff states in his deposition that he is bringing his claim against them because they are members of the PRC. SMF ¶ 31(h). When questioned more closely, Plaintiff states that he does not know if Defendant Marsh or anyone else had personal knowledge (SMF ¶ 31(i)), he was "pretty sure" Defendant Thompson was on the PRC and "figured" he knew what was going on (SMF ¶ 31(j)). Regarding Defendant Smith, Plaintiff simply said that he was "pretty sure" Defendant Smith was on the PRC (SMF ¶ 31(k)). Plaintiff's own words demonstrate that he is presenting a mere hypothesis that Defendants Marsh, Thompson, and Smith had personal knowledge. These

facts are insufficient to support a § 1983 cause of action. *Kirk v. Roan*, 2006 WL 2645154, at 3 (M.D. Pa. Sept. 14, 2006).

Plaintiff's claims against Defendant Harpster and Davis also must fail because they had no personal involvement in assigning Plaintiff to Middleton's cell. Plaintiff claims that Defendant Harpster reviewed, designated, and/or approved cell assignments (Doc. 1, ¶ 83); however, in February 2009, Defendant Harpster was the unit Manager of A Unit and had no supervisory responsibilities for the Administrative Custody section of D Housing Unit, the housing unit where inmates Mikell and Middleton were housed. SMF ¶ 32. Plaintiff cannot show that Defendant Davis was personally involved in assigning him to Middleton's cell when, in Plaintiff's own words, Defendant Davis merely implemented orders.[7] Doc. 1, ¶ 91. Defendant Davis had no authority or decision making ability regarding where Plaintiff or Middleton were celled. SMF ¶ 33.

### IV. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR THEIR ACTIONS.

Public officials are entitled to qualified immunity unless the rights they are allegedly violating are sufficiently clear that a reasonable official would understand that his actions were violating that right. *Anderson v. Creighton*, 483

---

[7] Additionally, Plaintiff contradicted his claim that he told Davis Middleton was dangerous when he stated in his deposition that he told Defendant Davis he was not going in the cell because Middleton did not want a cellmate, and that he was not refusing to go in the cell. Dep. 52:2-25; Doc 1 ¶ 42.

15

U.S. 635, 640 (1987). The Court must first determine if the state actor has violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Here, the Defendants in no way violated Plaintiff's constitutional rights. However, even if the Court would conclude a violation, it is not clear that a reasonable corrections officer would understand that his actions violated any constitutional rights when he had placed a willing inmate in a cell with another inmate (SMF, ¶ 8). Therefore, Defendants are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendants' motion for summary judgment.

**Respectfully submitted,**

**LINDA L. KELLY**
**Attorney General**

By:  *s/Page Darney*
**PAGE DARNEY**
**Office of Attorney General**          **Deputy Attorney General**
**15th Floor, Strawberry Square**       **Attorney ID 312959**
**Harrisburg, PA 17120**
**Phone: (717) 705-7327**               **GREGORY R. NEUHAUSER**
**Fax:    (717) 772-4526**              **Chief Deputy Attorney General**
**pdarney@attorneygeneral.gov**         **Chief, Civil Litigation Section**

**Date: October 1, 2012**

## CERTIFICATE OF WORD COUNT

I, Page Darney, Deputy Attorney General, hereby certify that the Brief in Support of Defendants' Motion for Summary Judgment filed on October 1, 2012 contains 3,618 words. In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

> By: *s/Page Darney*
> **PAGE DARNEY**
> **Deputy Attorney General**
> **Attorney ID 312959**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAMIEN MIKELL,** | : |
| **Plaintiff** | : |
| | : **No. 1:11-CV-388** |
| v. | : |
| | : **Judge John E. Jones, III** |
| **SHIRLEY R. MOORE et al,** | : |
| **Respondents** | : |
| | : **(Electronically Filed)** |

## CERTIFICATE OF SERVICE

I, PAGE DARNEY, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on October 1, 2012, I caused to be served a true and correct copy of the foregoing document titled Brief in Support of Defendants' Motion for Summary Judgment, by First Class U.S. Mail to the following:

Damien Mikell, DM-6559
SCI-Greene
175 Progress Drive
Waynesburg, PA 15370

*s/Page Darney*
**PAGE DARNEY**
**Deputy Attorney General**