## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMIEN MIKELL,** | : | **Civil No. 1:11-CV-388** |
| | : | |
| **Plaintiff** | : | **(Judge Jones)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **SHIRLEY R. MOORE, et al.,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.   INTRODUCTION

The plaintiff in this action, Damien Mikell, is an inmate in the custody of the Pennsylvania Department of Corrections.  He is currently housed at the State Correctional Institution at Greene, and was previously incarcerated at SCI-Rockview. The plaintiff commenced this action on March 1, 2011, bringing claims against a number of prison officials at SCI-Rockview under 42 U.S.C. § 1983.  (Id.)  In the complaint, the plaintiff alleges that the defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution when they failed to protect him from an attack by another inmate on February 20, 2009, despite having knowledge of the attacker's dangerousness, and the risk of harm he posed to the plaintiff and others.  (Id.)

This matter now comes before the court on the plaintiff's motion to compel the defendants to produce additional responses to discovery requests that the plaintiff propounded. (Doc. 43.) The motion to compel is fully briefed and is ripe for disposition. (Docs. 44, 55, 62.)

Upon consideration, we find insufficient basis to compel the defendants to provide additional discovery responses to those that they have already furnished to the plaintiff. With respect to certain discovery requests, the defendants have submitted unsworn declarations stating that the materials the plaintiff has requested do not exist, or cannot be found. On the basis of this representation, we are unpersuaded by the plaintiff's professed skepticism, or requests that the defendants be required to do more than they have already done to respond to these discovery requests.

With respect to other requests for information about the inmate who attacked the plaintiff, Gregory Middleton, including sensitive psychological information and other information from his inmate file, we conclude that the plaintiff's interests in reviewing this material is insufficient to overcome the legitimate interests of the Department of Corrections in preventing inmates from obtaining private and other potentially sensitive information about other prisoners within the Department of Corrections custody.

Furthermore, the plaintiff's asserted reason for wanting to obtain this sensitive information appears largely focused on learning whether Middleton had refused to accept a cell mate or otherwise demonstrated a likelihood of attacking a cell mate if he was required to live with another inmate. Plaintiff's speculation about what this inmate's file may reveal is, we believe, insufficient to cause the court to override the Department of Corrections' formal policy against releasing this information to other inmates. Moreover, and importantly, counsel for the defendants has affirmatively represented that prison officials reviewed inmate records and found that Middleton was not listed as single cell only; was not listed as "Z" coded; and that he did not refuse another inmate coming into his cell when he was informed that he would be getting a cell mate. On the basis of this representation, and the lack of other apparent justification for compelling the Department of Corrections to disclose sensitive inmate information in disregard of the Department's prohibition against such disclosures, we find that the plaintiff's motion to require wholesale production of this information should be denied.

However, recognizing the arguable relevance of some of this information to Mikell's claims, out of an abundance of caution we will direct the Department of Corrections to provide the court for its *in camera* review any documentation relating to inmate Middleton which may speak to any risk to third parties presented by this

prisoner during the six month period immediately preceding this February 2009 assault.

In addition to the foregoing, we find that other aspects of the plaintiff's requested discovery is overbroad or unduly burdensome, and that the defendants' responses to the discovery requests propounded upon them has been sufficient.

## II.     DISCUSSION

### A.     Relevant Legal Standards

Rule 26(b)(1) of the Federal Rules of Civil Procedure supplies the scope and limitations governing the use of discovery in a federal civil action:

> (1) Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).  Issues relating to the scope of discovery permitted under the Rules are to be resolved, almost exclusively, at the discretion of the court.  Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  A court's decisions regarding the conduct of discovery will be disturbed only upon a showing

of an abuse of discretion. <u>Marroquin-Manriziuez v. I.N.S.</u>, 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. <u>See</u> <u>Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc</u>., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." <u>Saldi v. Paul Revere Life Ins. Co.</u>, 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing <u>Scott Paper Co. v. United States</u>, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." <u>Kresefky v. Panasonic Commc'ns and Sys. Co.</u>, 169 F.R.D. 54, 64 (D.N.J.1996); <u>see also</u> <u>Hasbrouck v. BankAmerica Hous. Servs</u>., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); <u>EEOC v. Mr. Gold, Inc.</u>, 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

<u>Halsey v. Pfeiffer</u>, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

Rule 33 of the Federal Rules of Civil Procedure provides for discovery through written interrogatories. Rule 33(a)(2) specifically states that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b). Fed. R. Civ. P. 33(a)(2). The Rule further directs that, in the case of a corporate party, the interrogatories must be answered by "any officer or agent, who must furnish the

information available to the party." Fed. R. Civ. P. 33(b)(1)(B). Rule 34, in turn, provides similar and additional requirements with respect to requests for the production of documents in the "responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

Rule 37 authorizes a party to move to compel disclosure if the discovery propounding discovery believes that it has received incomplete or inadequate answers to discover authorized under Rule 26. Fed. R. Civ. P. 37. With respect specifically to requests for production of documents and interrogatories, Rule 37 provides:

> (B) To Compel a Discovery Response. A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
> ...
>
> (iii) a party fails to answer an interrogatory submitted under Rule 33; or
>
> (iv) a party fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34.

Fed. R. Civ. P. 37(a)(3)(B). Rule 37 further states that "[f]or purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Rule 37(a) further provides that if a court grants a motion to compel, it must require the party whose conduct necessitated the motion to pay the moving party's fees unless, *inter alia*, the movant filed the motion without attempting in good faith to obtain the

discovery without resorting to court action, or where other circumstances make an award of expenses unjustified. Fed. R. Civ. P. 37(a)(5)(A).

A party moving under Rule 37 to compel discovery, or for sanctions, bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

One other immutable rule defines the court's discretion when ruling on motions for this type. It is clear that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. Therefore, absent proof of deliberate spoliation of evidence, the court cannot sanction the failure to produce that which no longer exists. See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 08-

5904, 2010 WL 5186088 (E.D.Pa. Dec. 21, 2010); <u>Knauss v. Shannon</u>, No. 08-1698,

2009 WL 975251 (M.D.Pa. April 9, 2009).

**B.      The Discovery Requests at Issue**

The plaintiff has moved to compel further responses to several different

discovery requests that were propounded upon the defendants.  We address each in

turn.

**1.      Request No. 8: Documents in Plaintiff's Inmate Files**

In this discovery request, the plaintiff requested to be provided with a copy of

a document identified in his prison records as "Return Correspondence."  It appears

that the plaintiff became aware of this document on or about June 14, 2012, following

his review of portions of his own prison records that were found to be relevant and

not privileged.  The plaintiff believes that the document identified as "Return

Correspondence" may have some relation to the procedures that were in place

regarding a response to correspondence that the Department of Corrections received

from Diane Middleton regarding her son, Gregory Middleton, the inmate who

attacked the plaintiff.  The plaintiff asserts that certain documents that he believes

were prepared in response to this correspondence, including a Department of

Corrections tracking form, would be relevant to establish that defendant Moore-

Smeal had been assigned to take certain actions with respect to Gregory Middleton's

housing, and to respond to Diane Middleton's expressed concerns regarding her son being housed in the Restricted Housing Unit. Plaintiff believes this information could be relevant to support his claims that defendant Moore-Smeal was aware of Middleton's placement in the RHU on Administrative Custody status due to being classified as a danger to himself or others, but failed to take the steps necessary to ensure that Middleton did not harm any other inmates placed in his cell. (Doc. 62, at 4.)

It appears that after the plaintiff reviewed his inmate file, or DC-15, and identified a remark about "Return Correspondence," he spoke with Jeffrey Rackovan, the Superintendent at SCI-Rockview, who told the plaintiff that the document would be provided to him. Counsel for the defendants has represented that she requested Tracy Shawley, Assistant to the Superintendent, to search the plaintiff's DC-15 file for this document, but the document was not found. (Doc. 55, Ex. A, Unsworn Declaration of Tracy Shawley, ¶¶ 2-3.) Instead, the only document located in the DC-15 file regarding a June 20, 2009 response was titled "Correspondence" and has been produced. Defendants maintain that although they have searched for the document the plaintiff has requested, they have not found any other responsive documents.

Although the plaintiff takes issue with the defendants' representations, and in spite of his counter arguments regarding Department of Corrections mail tracking

policies, we do not find that there is any basis either to disbelieve the representations of counsel or Ms. Shawley that a search for the requested document was undertaken, and yielded no results. We will not compel the defendants to take further action regarding this particular request.

### 2. Request No. 11: Documents Relating to February 20, 2009 Incident

#### a. Pennsylvania State Police Report

The plaintiff believes that Corporal Wharren of the Pennsylvania State Police prepared a report of an investigation that he undertook following the February 20, 2009 altercation between Middleton and Mikkel, and on July 15, 2012, the plaintiff sent a letter to the defendants' counsel requesting a copy. The defendants informed the plaintiff that they do not have any reports in their files regarding any investigation conducted by Corporal Wharren, and, therefore, have no documents to produce.

For his part, the plaintiff expresses skepticism, and urges the court either to compel the production of any materials prepared by Corporal Wharren, or to produce an "explanation as to why no reports prepared by Cpl. Wharren are contained in their files . . . ." even though Corporal Wharren was assigned to investigate the incident. (Doc. 62, at 5.)

The defendants have responded to the discovery request by representing that they do not have any report by Corporal Wharren in their files. There is, therefore, simply no basis for the court to compel a further response, and we find no merit to the plaintiff's suggestion that the defendants should be forced to justify the absence of a document from their files, when there is insufficient basis to infer either that such a document was prepared, or that the defendants were ever provided a copy of it.

### b.    Remaining Investigation Documents

The other documents the plaintiff seeks concern SCI-Rockview's investigation into the February 20, 2009 incident. The record reflects that on June 15, 2012, the plaintiff was provided with a copy of the SCI-Rockview Extraordinary Incident Report, which documents SCI-Rockview's investigation into the incident. This report contains staff reports, inmate interviews, and accounts of the incident, as well as medical evaluations that were conducted following the incidence. (Doc. 37, Ex. 2, ¶¶ 11-13; Doc. 44, at 4.) Other than the Extraordinary Incident Report, the defendants represent that they have no additional investigative reports to produce. To the extent the plaintiff is seeking documents regarding Gregory Middleton, the defendants renew their objection to producing sensitive information about other prisoners to the plaintiff.

Although we agree with the plaintiff's assertion that the defendants' invocation of privacy concerns may, in some contexts, be forced to give way to the Federal Rules of Civil Procedure that govern discovery in this case, we nevertheless do not agree that the defendants should be compelled to produce more than what has already been furnished in response to this discovery request. We continue to find that the plaintiff has not demonstrated a sufficient justification for the wholesale production of private information regarding another inmate, and thus will deny his request to the extent he seeks this additional information.

### 3.     Request No. 12: Inmates Housed in the RHU on February 20, 2009

The Extraordinary Incident Report that the plaintiff was provided on June 15, 2012, identifies the cell assignment and institutional number of seven inmates. (Doc. 44, at 4.) Two of these inmates were interviewed as part of the investigation into the incident involving Middleton and Mikell. (Id.) The plaintiff has been pursuing additional information regarding the inmates who were housed in the RHU on the date of the incident, and to that end the plaintiff sent a request slip asking that the Employment Officer at SCI-Rockview produce the full names and institutional numbers of all inmates housed on the RHU on February 20, 2009. (Id.) The Employment Officer responded on June 21, 2009, informing him that there is no way

of discovering that information at this point, because there is no documentation or electronically stored information that can reconstruct who was assigned to what cell in the RHU on that date. (Doc. 55, Ex. B, Declaration of Jeffrey Rackovan, ¶¶ 2(b)-(c); ¶ 4.) The defendants have represented that the SCI-Rockview does not maintain the identifying information that the plaintiff seeks.

The plaintiff argues that the defendants could reconstruct this information if they tried to do so, but he does not offer any credible basis for this assertion. The defendants have produced the Extraordinary Incident Report, along with the identifying information for seven inmates. At this point, it appears that there is no basis for the court to compel the defendants to produce documents that do not exist, or to require them to reconstruct information when there would be no documentation that could back it up. This request will be denied.

### 4. Request No. 13: Available/Empty RHU Cells on February 20, 2009

The plaintiff also requests that the defendants be compelled to produce information concerning the number of empty or available cells within the SCI-Rockview RHU on February 20, 2009. As with the plaintiff's request for information about the inmates housed in the RHU on that day, the defendants have maintained that there is no way to answer this question, because SCI-Rockview does not maintain

information about the numbers of cells that were available in the past; instead, the only reports that can be run are for currently available beds within the prison. We credit the defendants' representation regarding the lack of responsive information with respect to this particular discovery request, and the plaintiff's motion to compel additional production will be denied.

>    **5.**    **Request Nos. 16-18, 20: Documents Concerning Gregory Middleton**

In these requests, the plaintiff seeks documentation regarding Gregory Middleton's requests to be classified as Z-Code status, his refusal to be housed with another inmate, institutional conduct or disciplinary history, and information regarding this inmate's psychological medication history contained in his DC-14 file. The defendants have refused to produce any information that it deems confidential about this inmate, citing institutional concerns and policies prohibiting the release of inmate information to other inmates, chiefly pursuant to DC-ADM 003, which prohibits the release of inmate information to other inmates. The defendants have supported their position with a declaration from John Wetzel, the Secretary of the Department of Corrections, in which Secretary Wetzel sets forth several compelling reasons for restricting the release of inmate information to other inmates, including compromises to institutional security; conflict between inmates; manipulation,

harassment, blackmail, or assault of inmates; among other related concerns. (Doc. 55, Ex. C, Declaration of John Wetzel, ¶¶ 6-10.)

The plaintiff argues, essentially, that the defendants' stated reasons for declining to produce information about Gregory Middleton based upon prison regulations or confidentiality concerns should not be upheld by the court because these privileges are not recognized in the Federal Rules of Civil Procedure.

Upon consideration, we find that the defendants should not be required to produce directly to the plaintiff this information about another inmate that the Department of Corrections maintains is confidential, and which is treated as such. The plaintiff has done nothing to respond persuasively to dispute these legitimate penological concerns, and we do not find a sufficient basis has been demonstrated to show that the requested information is relevant and, if so, that it should be disclosed notwithstanding these legitimate institutional concerns about a matter of paramount importance to the Department of Corrections – inmate safety. We note that other courts within the Middle District have likewise refused to override the Department of Corrections prohibition on the release of inmate files and information to other inmates in the course of civil litigation, and we similarly will not order the wholesale production of Gregory Middleton's inmate information to the plaintiff. See, e.g.,

Mincy v. Chmielewski, No. 1:05-CV-0292, 2006 WL 3042968, at *3 (M.D. Pa. Oct. 25, 2006).

We recognize, however, that to sustain his failure to protect claim and show deliberate indifference, a plaintiff would need to come forward with evidence showing a substantial basis for demonstrating that a prison official was deliberately indifferent in the face of information that presented a substantial risk to inmate safety. As the Supreme Court has observed in this context: "If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was *longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,* and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk *and thus must have known about it*, then such evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk." Farmer, 511 U.S. at 842-43 (emphasis added).

Understanding that Mikell must show subjective knowledge of a third party risk presented by inmate Middleton that is of an immediate nature in order to sustain his claim, we recognize that Middleton's inmate records may contain such information.  Recognizing that these prison records may contain arguably discoverable material, we note that in the past courts have reconciled the interests of inmate-plaintiffs and corrections officials by rejecting broadly framed requests for

access to prison records, see Paluch v. Dawson, No. 06-1751, 2007 WL 4375937, *4-5 (M.D. Pa. Dec. 12, 2007), while conducting an *in camera* review of those records which may be relevant to more narrowly tailored discovery demands. Paluch v. Dawson, No. 06-175, 2008 WL 2785638, *3 (M.D. Pa. July 17, 2008).

This is the course we will adopt here. We will direct the defendants to provide to the court for its *in camera* inspection any documentation relating to inmate Middleton which may speak to any risk to third parties presented by this prisoner during the six month period immediately preceding this February 2009 assault. Armed with this information the court can determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and (3) to what extent, in what format, and under what conditions it may be released to the plaintiff.

## 6. Request No. 25: Documents Regarding Defendant Davis

In Document Request No. 25, the plaintiff seeks documents concerning allegations of racial or religious discrimination involving defendant Davis. The defendants objected to the request as overly broad, burdensome, and irrelevant, but they nonetheless contacted the Human Resources Office within the Department of Corrections, and were informed that no complaints of racial discrimination or religious discrimination against Davis were found in the files. Likewise,

Superintendent Rackovan reviewed the inmate grievance tracking system at SCI-Rockview to search for grievances involving "problems with staff" and "harassment", and found no grievances involving defendant Davis.

We agree with the defendants that this particular discovery request does not appear relevant, and that it is potentially burdensome and overly broad even if it has arguable relevance. But regardless, we are satisfied that the defendants undertook a reasonable investigation in order to respond to this particular discovery request, and they identified no responsive documentation. We will not compel further production or efforts with respect to Document Request No. 25.

### 7. Request No. 26: Documents Requesting Job Descriptions

The plaintiff also requests that the defendants be compelled to produce a written job description for the Deputy Secretary for the Central Region of the Department of Corrections. Secretary Wetzel has submitted a declaration attesting to the fact that no written job description exists for such employees, and accordingly there are no documents to be produced. We credit this representation and accordingly find no basis to compel further production or efforts with respect to this document request.

**8. Request Nos. 28, 29: Z-Code and RHU Cell Transfer Documents**

In these requests, the plaintiff requests Department of Corrections policy regarding Z-Code classifications, specifically, DC-ADM-11.2.1 and policies regarding cell assignments and transfers as set forth in DC-ADM 6.3.1 and 6.5.1. The defendants have objected to the production of these materials on the basis of institutional security interests, but without waiving those objections, the defendants have produced for the plaintiff section 5 of DC-ADM 11.2.1, which contains inmate Z-Code procedures. (Doc. 55, Ex. D.)

The plaintiff again argues that the Department of Corrections' representations about confidentiality and security concerns should be overridden because these concerns are not specifically embraced by or articulated in the Federal Rules of Civil Procedure. The plaintiff also argues that by producing some documents in response to these requests, the defendants have thoroughly discredited their representations about confidentiality concerns, and should be forced to disclose the requested procedures manuals.

Secretary Wetzel has submitted a declaration in which he attests to the legitimate institutional security concerns about releasing information to inmates regarding cell assignments and transfers – matters that directly implicate Department

of Corrections efforts to ensure safety and control of inmates, as well as safety and security of staff, and the public. (Doc. 55, Ex. C.) Upon consideration, we conclude that the defendants did not waive their objections to further production by disclosing one section of DC-ADM 11.2.1 to the plaintiff, and we find further that the defendants' concerns with respect to the remaining portions of the procedure manuals are valid and should be kept confidential in the interests of prison safety and security. Accordingly, Mikell's motion requesting the production of these manuals will be denied. See Bailey v. McMahon, No. 1:CV-07-2238, 2012 WL 1246147, at *7 (M.D. Pa. Apr. 12, 2012) (Kane, C.J.) (denying motion to compel production of DC-ADM 6.3.1 and 6.5.1, upholding the Department of Corrections objection on basis of confidentiality and security interests).

### 9. Request No. 30: L-5 RHU Cell Assignment/Transfers Authorization

In this request, the plaintiff seeks Department of Corrections policies regarding L-5 RHU cell assignments, transfers, and authorizations. Defendants have represented that these policies are contained within DC-ADM 6.3.1 and 6.5.1 policies regarding cell assignments and transfers within the RHU, and we will deny the motion to compel this information for the same reasons we have declined to compel the production of DC-ADM 6.3.1 and 6.5.1.

## 10.    Interrogatory No. 8: Dep. Moore-Smeal's Responsibilities

In this interrogatory, the plaintiff requested information regarding Deputy Moore-Smeal's responsibilities with respect to correspondence regarding the housing assignments of inmates with mental health or physical health concerns. Defendant Moore-Smeal objected to the interrogatory as vague, overbroad, and irrelevant. This defendant renews this objection, since it is unclear what information the plaintiff seeks. However, in her response to a separate interrogatory, Defendant Moore-Smeal informed the plaintiff that "individual inmate celling issues are not my responsibility and are handled by the staff at the prison where the inmate is confined." (Doc. 55, at 12.) Moreover, the defendants note that they have provided the plaintiff with a copy of section 5 of DC-ADM 11.2.1, which contains inmate Z-Code procedures, and they submit that this information is a sufficient response to the plaintiff's inquiries.

The plaintiff has not responded to the defendants' argument regarding the sufficiency of their response, and we find that the defendants' response is adequate. The interrogatory has been answered, and the plaintiff has been provided additional information that is responsive to his particular request. There is nothing further to be compelled with respect to this interrogatory.

## 11.    Interrogatory No. 10: Moore-Smeal Response to Middleton Letter

In Interrogatory No. 10, the plaintiff requests information regarding defendant Moore-Smeal's response to a January 4, 2009 letter from Gregory Middleton's mother, Diane Middleton.  The defendant responded by producing a copy of her responsive letter, dated February 4, 2009, as well as Diane Middleton's letter.  The plaintiff insists that this response is insufficient, and that this defendant should be required additionally to produce information about any subordinate employees who informed her regarding Gregory Middleton's status on Administrative Custody within the RHU due to demands he was placing upon housing staff, and any information she relied on in preparing her response to Middleton in February 2009.

Upon consideration we do not find that defendant Moore-Smeal should be compelled to provided a further response to this interrogatory.  The plaintiff has been provided with correspondence relevant to his interrogatory to this particular defendant – a defendant who informed the plaintiff that she did not have responsibility for housing inmates at SCI-Rockview, and that these matters were handled by staff at the institution.  The plaintiff appears to be trying to turn this legitimate response into a new set of discovery requests, in order to require this particular defendant to provide further information about the staff at SCI-Rockview

who made inmate celling decisions. We do not find a sufficient basis to require this particular defendant to provide more detailed answers to the limited interrogatory that was propounded upon her.

### 12. Interrogatory No. 2: DC-ADM 802

In this interrogatory, the plaintiff requested a copy of DC-ADM 802. The defendants have included a true and correct copy of this document as an exhibit to their brief, and thus this request has been answered. (Doc. 55, Ex. E.)

### 13. Interrogatory No. 12: Tennis and the Moore-Smeal Letter

In Interrogatory No. 12, the plaintiff requested information as to former Superintendent Franklin J. Tennis's knowledge of the Diane Middleton - Deputy Secretary Moore-Smeal correspondence in January and February, 2009. The defendants previously informed the plaintiff that Tennis received a copy of the Moore-Smeal response, and he included a copy as part of his answer to the interrogatory. The defendants represent that they have identified no information or documents to suggest that Tennis had any knowledge of this matter, or took any action regarding it, prior to receiving a copy of the February 4, 2009 letter. Accordingly, the defendants maintain that there is no further response to be made to this interrogatory. As with Interrogatory No. 10, it appears that the plaintiff is now attempting to stretch this interrogatory into a new inquiry about the steps Tennis may

have taken after receiving this correspondence, including questions he may have asked subordinate employees at SCI-Rockview about Gregory Middleton. We find no reason to require these additional responses, both because we find the initial response to this interrogatory to have been sufficient, but also because the defendants have maintained that they have found no other responsive information. The plaintiff cannot compel further responses based solely on his own belief about what former Superintendent Tennis "should have" done after learning about the Middleton - Moore-Smeal correspondence. (Doc. 62, at 10.)

### 14. Interrogatory No. 3: Middleton's Transfer to the RHU in December, 2008

Finally, in Interrogatory No. 3, the plaintiff seeks information regarding defendants Thompson, Marsh, Smith, Eaton, Vance, and Davis knowledge of Middleton's December 2008 placement in the RHU on Administrative Custody status. The defendants maintain their objection to producing responsive documents or information regarding the cell assignments of another inmate in the custody of the Department of Corrections. Additionally, however, the defendants have informed the plaintiff that when he was housed with Middleton, space was needed within the RHU, Middleton was not restricted from having cell mates, and upon being informed that he was getting a cell mate, Middleton did not object. In consideration of their

objections and limited response, the defendants maintain that no further response should be compelled.

For his part, Mikell argues that he needs to know the date on which each of these defendants became aware that Middleton had been placed in the RHU after being classified as a danger to himself or others. As before, we find that the Department of Corrections has adequately set forth a basis for its refusal to produce detailed information regarding inmate housing and custody decisions, and we find that the defendants' response to this particular interrogatory is relevant and sufficient, insofar as it represents that Middleton was not classified as Z-Code status, and that he was informed he would be getting a cell mate and did not object. Plaintiff's response to the defendants' opposition does not convince us that the defendants should be compelled to make a further, or more detailed answer than the one they have already provided.

## III.  __ORDER__

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED THAT the plaintiff's motion to compel (Doc. 43.) is DENIED, in part, and GRANTED in part, as follows: The motion is DENIED in all respects, with one exception. On or before **April 1, 2013**, the defendants to provide to the court for its *in camera* inspection any documentation relating to inmate Middleton which may speak to any risk to third

parties presented by this prisoner during the six month period immediately preceding this February 2009 assault. Armed with this information the court can determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and (3) to what extent, in what format, and under what conditions it may be released to the plaintiff.

So ordered this 5th day of March 2013.

*/S/ Martin C. Carlson*

Martin C. Carlson
United States Magistrate Judge