**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAMIEN MIKELL,** | : | **Civil No. 1:11-CV-388** |
| | : | |
| **Plaintiff** | : | **(Judge Jones)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **SHIRLEY MOORE, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**REPORT AND RECOMMENDATION**

**I.    Introduction**

Under Rule 56 of the Federal Rules of Civil Procedure a party is entitled to summary judgment in its favor when there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P., Rule 56. This case aptly illustrates this basic tenet of federal civil practice, a tenet that defines how federal courts are to apply the law to the factual circumstances presented in an individual case.

The plaintiff in this civil action is Damien Mikell, a state inmate who was housed at the State Correctional Institution (SCI), Rockview in February 2009. On February 20, 2009, Mikell was assaulted by a fellow-inmate Gregory Middleton after he was placed, over his objections, in Middleton's cell. Alleging that correctional officials, ranging from senior supervisory officials at both SCI Rockview and the

Department of Corrections Central Office to line staff at SCI Rockview, had knowledge of Middleton's dangerous propensities, Mikell has sued nine correctional defendants, alleging that they failed to protect him from this assault at the hands of a fellow prisoner.  Thus, the gravamen of Mikell's complaint is the allegation that correctional staff violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect Mikell from an attack by a fellow inmate.

All of the correctional defendants have now moved for summary judgment, asserting that Mikell's claims are barred by the statute of limitations and further fail on their merits since as to each defendant there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P., Rule 56.  However, our review of this case reveals that there are factual questions which preclude summary judgment on statute of limitations grounds.  Further, with respect to the plaintiff's claims as to these nine different defendants we find that, while there are  no genuine issues as to any material facts regarding a number of defendants, with respect to several defendants the factual record is marked by conflicts, confusion and controversy.  Therefore, mindful of the fact that summary judgment may be granted only where there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P., Rule

56, we recommend that this motion be granted, in part, and denied, in part, as discussed more fully below.

## II.   Statement of Facts and of the Case

### A.   Mikell is Assaulted at SCI Rockview

In February of 2009, the plaintiff, Damien Mikell, was housed at the State Correctional Institution-Rockview, where he was serving a state sentence. (Doc. 63, ¶3.)[1] Another inmate, Gregory Middleton, was also incarcerated at SCI Rockview at this time, serving a sentence for murder. (Id., ¶5.) In February of 2009, Middleton was a difficult, obstreperous inmate, who was placing demands on correctional staff regarding his prison housing. (Id., Ex. B.) In particular, Middleton sought single-cell housing, was insistent that another inmate not be housed with him, and voiced his insistence in threatening terms. (Doc. 1.) Despite these prior threats by Middleton, on February 20, 2009, prison staff placed Mikell in a cell with Middleton, over Mikell and Middleton's protests. Shortly after Mikell was transferred into Middleton's cell, he was assaulted by Middleton. This assault forms the basis of Mikell's failure-to-protect claim.

---

[1] In his deposition Mikell indicated that this sentence related to a homicide charge. (Doc. 63, Ex. C, p.14.)

3

## B.   Staff Knowledge of Middleton's Threats

While the fact of this assault is undisputed, what is far less certain is the state of staff knowledge of the threat posed by Middleton, and the degree of staff involvement in the cell assignment decision that led to this assault.  With respect to this claim the precise nature of Mikell's and Middleton's complaints, the manner in which those complaints were expressed, the identities of the persons to whom Middleton or Mikell complained,  and the degree to which Middleton or Mikell voiced explicit concerns that Middleton was threatening to harm cellmates, are all hotly contested factual issues.   However, as to these disputed factual issues, construing the conflicting evidence in a light most favorable to Mikell, as we are required to do, we find that the following facts are essentially undisputed:

Several weeks prior to this incident in January 2009, Gregory Middleton's mother wrote to the Department of Corrections complaining about her inability to visit with her son, who was in administrative custody.   In response to this correspondence, defendant Shirley Moore-Smeal, who was then the Deputy Secretary for the Central Region of the Department of Corrections, wrote to Ms. Middleton on February 4, 2009, noting that Middleton was in administrative detention because "he continues to place demands on staff regarding his housing status".  (Id., Ex. B.) Moore's letter assured Ms. Middleton that the Department of Corrections was

committed to ensuring that each institution it oversees operated in compliance with Departmental policies, but contained no further specific discussion of Middleton's conflicts with correctional officials regarding housing issues at the prison, and there is no indication that Moore played any further active in these housing decisions. (Id.) Thus, Moore's involvement in this matter appears to be limited to an acknowledgment that Middleton "continues to place demands on staff regarding his housing status." (Id., Ex. B.) A copy of the letter was provided to the superintendent at SCI Rockview, defendant Tennis, but there is no further evidence that defendant Tennis or Moore played any direct role in the matters leading up to the decision to house Mikell with Middleton together on February 20, 2009. Rather, Mikell's complaint simply faults Moore and Tennis for an alleged failure to oversee other prison staff.

As to the six other staff named as defendants, Mikell's allegations are more specific and detailed. For example, Mikell names Deputy Superintendents Marsh and Thompson, and program manager Linda Smith as defendants and alleges that they had specific and detailed knowledge of Middleton's threats to kill any cellmate placed in his cell both from their own direct contacts with Middleton and from reviewing Middleton's inmate file while they served on the prison's Program Review Committee (PRC). (Doc. 1, ¶¶ 76-84.) Despite this knowledge, Mikell alleged that

these defendants permitted Mikell to be celled with Middleton, at a time when he contends that they knew that Middleton presented a threat to any cellmate.[2]

Mikell further alleges that three other correctional defendants who worked in the prison security office and implemented the decision to house Mikell in the same cell as Middleton, Captain Eaton, Lieutenant Vance and Correctional Officer Davis, also knew that Middleton was threatening to kill any cellmate placed in his cell in February 2009. (Id., ¶¶88-95.) Knowing this, Mikell claims that Captain Eaton and Lieutenant Vance instructed Officer Davis to place Mikell in Middleton's cell on February 20, 2009. Mikell further contends that Davis ignored his pleas not to be placed in the cell because Mikell feared for his safety at Middleton's hands. (Id.)[3]

---

[2]With respect to these defendants, defense counsel notes that Mikell has recanted at least some of these claims with respect to defendant Marsh, stating in a subsequent deposition that he had no evidence that Marsh knew that he was being placed in a cell with Middleton. (Doc. 63, Ex. C, p.75.) The defendants also point to the imprecision of Mikell's allegations in his deposition to suggest that the plaintiff has failed to state a claim against defendants Thompson and Smith. (Doc. 63, Ex. C. Pp.75-78.) However, we also note that, unlike some other defendants named in this lawsuit, defendants Thompson and Smith have not submitted any declarations contesting Mikell's allegations that they were subjectively aware of the threats made by Middleton, but nonetheless permitted the plaintiff to be housed with Middleton.

[3]Mikell's factual averments in this regard are not contested by any declarations from defendants Eaton and Vance. For his part, defendant Davis has simply provided a declaration which stated that he did not make cell placement decisions but merely implemented those decisions. (Doc. 63, Ex. G.) Notably, Davis' declaration does not specifically dispute Mikell's claim that he asked the

Finally, Mikell's complaint identifies one other defendant, Unit Manager Craig Harpster, and contends that Harpster was the unit manager in the administrative detention unit at the time of this incident.  According to Mikell, Harpster was present and heard Middleton threaten to harm other inmates if they were placed in his cell, but nonetheless authorized the placement of Mikell in Middleton's cell.  While Harpster does not dispute knowledge of threatening behavior by Middleton,  Harpster has attested, without contradiction, that he did not serve as the unit manager on Middleton's housing unit at the time of the February 2009 assault and, therefore, played no role in the decision to house Mikell with Middleton.  (Doc. 63, Ex. F.)

It is against this factual backdrop, one marked both by moments of factual consensus and periods of factual confusion, that Mikell was placed in the cell occupied by inmate Middleton on February 20, 2009, and was later assaulted by Middleton.  Mikell timely grieved this incident, filing an initial grievance with prison officials on March 1, 2009, which was denied through all stages of the administrative appeals process by May 28, 2009.  (Doc. 63, ¶¶10-15.)  This lawsuit then followed.

### C.   **This Litigation and the Pending Summary Judgment Motion**

On March 1, 2011, Mikell commenced this action by filing a *pro se* complaint against 9 corrections defendants.  (Doc. 1.)  These corrections defendants included:

--------

officer not to place him in a cell with Middleton out of fear for his safety.

Shirley Moore-Smeal, the Deputy Secretary for the Central Region of the Department of Corrections, Superintendent Tennis, Deputy Superintendents Marsh and Thompson, Program Manager Smith, Captain Eaton, Lieutenant Vance, Unit Manager Harpster, and Correctional Officer Davis. In this complaint, Mikell alleged that these defendants collectively failed to protect him from the known danger of assault at the hands of inmate Middleton.

This complaint was filed with the Court on March 1, 2009, a little more than two years after this February 20, 2009 assault. The undisputed facts proffered by the defendants in support of their motion for summary judgment reveal, however, that Mikell was attempting to submit some sort of pleadings to the court in the days immediately preceding the two year anniversary of this prison assault. Thus, Mikell endeavored to mail a package to an attorney in Philadelphia on February 14, 2011, and delivered a package to prison officials for mailing to the federal courts in Williamsport on February 15, 2011. (Doc. 63, ¶¶24-26.) Unfortunately for Mikell, the address used by the plaintiff on his February 15, 2011, mailing to federal court was incorrect.

Undeterred, on February 22, 2011, Mikell attempted to mail two more packages to the federal courts in Scranton, but those items were returned to him on February 23, 2011, due to insufficient postage. At Mikell's request, the packages were re-

mailed on February 23, 2011.  Mikell's complaint, in turn, was received and filed with the Court on March 1, 2011, and this litigation commenced.  The complaint that was ultimately received and filed with the Court had been dated by Mikell on February 16, 2011, within the period of the statute of limitations.  (Doc.1.)

As part of this litigation, the corrections defendants have now moved for summary judgment on all of Mikell's claims, arguing both that Mikell's complaint is untimely under the two year statute of limitations applicable to federal civil rights claims and contending that Mikell has failed to state a claim upon which relief may be granted.  (Doc. 59 .)  This motion has been fully briefed by the parties,  and is now ripe for resolution.  For the reasons set forth below, we recommend that the motion be granted, in part, and denied, in part, as follows:  First, we find that disputed material factual issues preclude summary judgment on behalf of the defendants with respect to their statute of limitations claim.  Moreover, with respect to defendants Thompson, Smith,  Eaton,  Vance,  and Davis there remain disputed issues of fact which make summary judgment inappropriate.  However, with respect to defendants Moore, Tennis, Marsh and Harpster presently there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P., Rule 56.  Therefore, with respect to these remaining defendants, it is recommended that the motion for summary judgment be granted.

### III.   <u>Discussion</u>

### A.   <u>Summary Judgment-Standard of Review</u>

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P., Rule 56 (a).  Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality."  <u>Univac Dental Co. v. Dentsply Int'l, Inc.</u>, No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  <u>Id.</u> at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  <u>Conoshenti v. Pub. Serv. Elec.</u>

& Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered

in ruling on a motion for summary judgment." <u>Countryside Oil Co., Inc. v. Travelers Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment.  With respect to such claims, it is well-settled that:  "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." <u>Shelton v. University of Medicine & Dentistry of N.J.</u>, 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing <u>Stelwagon Mfg. v. Tarmac Roofing Sys., Inc.</u>, 63 F.3d 1267, 1275, n.17 (3d Cir. 1995).  In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. <u>See</u> <u>Buttice v. G.D. Searle & Co.</u>, 938 F.Supp. 561 (E.D.Mo.1996).   Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. <u>See</u> <u>Burgess v. Allstate Ins. Co.</u>, 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. <u>Henry v. Colonial Baking Co. of Dothan</u>, 952 F.Supp. 744 (M.D.Ala.1996).

<u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005).  Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment.  Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts

have typically rebuffed these efforts and held instead that summary judgment is appropriate.  See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted).  Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982).  "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).  In particular, a plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but

on the plaintiff's own interpretation of events and, essentially, opinion testimony. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with the conclusory allegations of an affidavit."); Iseley v. Beard, No. 02-2006, 2009 U.S. Dist. LEXIS 52014, *32 (M.D. Pa. Mar. 30, 2010) (conclusory allegations contradicted by documentary evidence cannot be accepted as true).

Yet, while "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment," Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995), and "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007). Therefore, in a case where the parties' pleadings reveal disputes regarding the admissibility of specific evidence, the principles governing consideration of summary judgment motions –which enjoin us to examine the evidence in a light most favorable to the party opposing the motion–also call upon us to resolve all genuine disputes concerning the admissibility of specific items of evidence in favor of the party

opposing the motion.  This principle applies with particular force to factual disputes which relate to matters of motive or intent since it is well-settled that:  "The motive or absence of motive of a party to engage in conduct alleged by another party is relevant to determining whether a genuine issue of fact exists.  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 596 (1986)."  Berda v. CBS Inc., 800 F.Supp. 1272, 1276 (W.D.Pa), aff'd., 975 F.2d 1548 (3d Cir. 1992).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  L.R. 56.1. Under the Local Rules, the failure to follow these instructions  and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement.  This Local Rule serves several purposes.  First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute.  Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go

> beyond the pleadings and by her own affidavits, or by the depositions,
> answers to interrogatories, and admissions on file, *designated specific
> facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324
> (1986) (internal quotations omitted) (emphasis added).

Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## B.   Statute of Limitations, Civil Rights Actions

Because the defendants' motion initially raises the bar of the statute of limitations, it is essential at the outset to consider how the statute of limitations applies to prisoner civil rights claims. It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has

16

reason to know of the injury that constitutes the basis of the cause of action.  Sameric

Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see

also Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a

continuing wrong theory, a plaintiff must make an exacting showing to avail himself

of this grounds for tolling the statute of limitations.  For example, it is well settled

that the "continuing conduct of [a] defendant will not stop the ticking of the

limitations clock [once] plaintiff obtained requisite information [to state a cause of

action].  On discovering an injury and its cause, a claimant must choose to sue or

forego that remedy."  Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir.

1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir.

1986)).  See also Lake v. Arnold,  232 F.3d 360, 266-68 (3d Cir. 2000).  Instead:

> The continuing violations doctrine is an "equitable exception to the
> timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744,
> 754 (3d Cir.1995).  Thus, "when a defendant's conduct is part of a
> continuing practice, an action is timely so long as the last act evidencing
> the continuing practice falls within the limitations period; in such an
> instance, the court will grant relief for the earlier related acts that would
> otherwise be time barred."  Brenner v. Local 514, United Bhd. of
> Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991). In
> order to benefit from the doctrine, a plaintiff must establish that the
> defendant's conduct is "more than the occurrence of isolated or sporadic
> acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry,
> we have recognized that courts should consider at least three factors: (1)
> subject matter-whether the violations constitute the same type of
> discrimination, tending to connect them in a continuing violation; (2)

frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.  See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)).  The consideration of "degree of permanence" is the most important of the factors.  See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001).

When dealing with mailed submissions from prisoners, like the complaint tendered here by Mikell, additional considerations come into play when assessing statute of limitations claims.  Specifically, such claims must also be examined under the so-called "prison mailbox rule."  As the court of appeals has explained:

[T]he Supreme Court promulgated the prison mailbox rule. Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).  Houston involved a pro se prisoner's appeal of a district court's denial of his petition for a writ of habeas corpus.  The prisoner gave a notice of appeal to prison authorities on the twenty-seventh day following the district court's judgment.  But the district court did not receive the filing until the thirty-first day, one day beyond the permitted period.  The United States Court of Appeals for the Sixth Circuit dismissed the appeal because the prisoner had filed it outside of the permitted thirty days.  The Supreme Court reversed, crafting a prison mailbox rule whereby the date on which a prisoner transmitted documents to prison authorities would be considered the actual filing date.  The Court designed the rule specifically for pro se prisoners.  Id. at 275, 108 S.Ct. 2379 ("[A] pro se prisoner has no choice but to hand his notice over to prison authorities for forwarding to the court clerk.").  The Court cited several policy considerations for its decision:  a pro se prisoner may only communicate with the district court through prison authorities; a tardy prisoner is not free to "walk" papers to the district court; and the

prevention of an intentional delay in transmission by prison authorities. Id. at 274, 108 S.Ct. 2379.

Longenette v. Krusing, 322 F.3d 758, 761 (3d Cir. 2003).

Several other basic principles govern application of the prison mailbox rule to statute of limitations claims. For example, as a general matter, where there is a genuine issue of material fact as to matters which directly relate to the application of the statute of limitations to a specific case, summary judgment on statute of limitations grounds is inappropriate. See Hersh v. Allen Products Co., Inc., 789 F.2d 230 (3d Cir. 1986). Further, in the inmate context, other guiding legal tenets define how the prison mailbox rule affects the timeliness of inmate claims. In this regard:

> When applying the mailbox rule to filings made by prisoner *pro se* litigants, the Third Circuit refuses to apply the mailbox rule when the prisoner's delay-not the prison-caused the filing to be untimely. For example, Houston did not apply to an untimely motion to amend judgment of a Section 1983 claim because the "motion was out of time before he even gave the motion to prison officials to mail" and, therefore, prison delay in mailing was not a factor in making the motion untimely. Smith v. Evans, 853 F.2d 155, 156-57 (3d Cir.1988); see also Akinola v. Doe, No. 05-4454, 165 Fed. Appx. 242 (3d Cir. Mar. 15, 2006) (affirming district court's dismissal of Section 1983 action filed four years after the claim accrued); Walker v. Fisher, No. 05-1437, 150 Fed. Appx. 160, 161-162 (3d Cir. Oct. 6, 2005) (holding Walker's Section 1983 claim was barred by the statute of limitation because he filed nearly a year after the limitations period had expired). In contrast, the Third Circuit has applied Houston's mailbox rule outside of the habeas context when the prisoner *pro se* litigant dated the filing within the time limit but the court docketed it after the deadline. Askew v. Jones, No. 04-3900,160 Fed. Appx. 140 (3d Cir. Dec. 13, 2005)(applying Houston's mailbox rule to a motion for reconsideration

with a ten-day limit where letter was dated within the time limit but docketed nine days later). Moreover, many district courts have applied the mailbox rule by using the date the prisoner signed the complaint as the date it was filed. Taylor v. Naylor, No. 04-1826, 2006 U.S. Dist. LEXIS 27322 at *7-8, (W.D.Pa. Apr. 6, 2006)("given the evidentiary difficulty in determining when a prisoner relinquishes control of the complaint to prison personnel, the date the plaintiff signed the original complaint is presumed to be the date plaintiff gave the complaint to prison officials to be mailed.") (citation omitted); Sabella v. Troutner, No. 3:CV-05-0427, 2006 U.S. Dist. LEXIS 5862 at *10-11 (M.D.Pa. Jan. 31, 2006)(looking at date plaintiff signed Section 1983 complaint to deem it timely and denying the motion to dismiss on statute of limitations grounds); Gibbs v. Deckers, 234 F.Supp.2d 458, 462 (D.Del.2002); Laboy v. Del. Corr. Ctr., 2004 U.S. Dist. LEXIS 3101 at *10 (D.Del.2004)("... the date on the document is treated as the date of filing").

Pendergrass v. Gray, CIV A 06-2247, 2006 WL 3165007 (E.D. Pa. Oct. 30, 2006).

## C.   **Constitutional Standards Governing Eighth Amendment Claims**

### 1.   **Failure-To-Protect Claims**

The defendants' motion for summary judgment also challenges Mikell's failure to protect claim on its merits. When examining such a challenge we begin by recognizing that proof of a culpable subjective intent is a critical component of an Eighth Amendment failure-to-protect claim. The leading case in the Third Circuit addressing deliberate indifference in this prison context is found in Beers-Capitol v. Whetzel, 256 F.3d 120 (3d Cir. 2001). In Beers-Capitol, the Third Circuit explained the basic requirements of a claim brought against a prison official under the Eighth Amendment as follows:

> An Eighth Amendment claim against a prison official must meet two requirements:   (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."

Id. at 125 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety."  Id.

This deliberate indifference standard "is a subjective standard under Farmer – the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."  Id.  Thus, " '[d]eliberate indifference can be shown when a prison official *knows of and disregards* an excessive risk to inmate health or safety' Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997) (quotation marks omitted)(emphasis added).  Accordingly,  "to survive summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Davis v. Williams, 354 F. App'x 603, 605-606 (3d Cir. 2009).

As explained in Beers-Capitol, in Eighth Amendment cases based on allegations of deliberate indifference on the part of prison officials or other supervisory defendants, the Supreme Court has "rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew

21

rather than what a reasonable official in his position would have known." Id. at 131. Specifically, the Supreme Court "held that 'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837). This requirement of actual knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

At the same time, this subjective standard does not insulate officials from liability where such officials choose to remain deliberately indifferent to an excessive or substantial or serious risk of harm to inmates. The Supreme Court explained:

> We are no more persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison officials will be free to ignore obvious dangers to inmates. Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

Farmer, 511 U.S. at 842. The Supreme Court also noted that a supervisory defendant's knowledge of a risk may be proved through circumstantial evidence, so

that "a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

The appellate courts recognize that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See, e.g. Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005). Instead, the Court of Appeals has interpreted Farmer to signal that "a plaintiff could make out a deliberate indifference case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's situation[.]" However, in order to show deliberate indifference in this fashion, a plaintiff would need to come forward with evidence showing a substantial basis for demonstrating that a prison official was deliberately indifferent in the face of information that presented a substantial risk to inmate safety. As the Supreme Court has observed in this context: "If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was *longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,* and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk *and thus must have known about it*, then such evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk." Farmer, 511 U.S. at 842-43(emphasis added).

Applying this standard, which looks to whether the alleged threat was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, court have rejected Eighth Amendment failure-to-protect claims with respect to individual prison officials, where the evidence was insufficient to put those prison officials subjectively on notice of a substantial risk of serious harm to the inmate. Thus, an inmate's report to a staff member that other prisoners harbored antipathy for him based upon his history as a child molester, standing alone, is insufficient to establish that prison officials were on notice of, and deliberately indifferent to, a substantial risk of harm. Davis v. Williams, 354 F.App'x 603, 605-606 (3d Cir. 2009). Similarly, an inmate cannot establish sufficient subjective awareness of a serious risk of harm to satisfy an Eighth Amendment claim by simply asserting that staff were informed that the inmate was not getting along with others, O'Connell v. Williams, 241 F.App'x 55, 58 (3d Cir. 2007), or that staff were present when a fellow inmate bragged about harassing the plaintiff-prisoner. Counterman v. Warren County Correctional Facility, 176 F. App'x 234 (3d Cir. 2006). This proof simply does not meet the exacting standard of subjective knowledge called for under the Eighth Amendment. Instead, in such cases: "[a]ctual knowledge can be proven circumstantially [only] where the general danger was obvious; that is, where 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or

24

expressly noted by prison officials in the past.' " <u>Counterman,</u> 176 F. App'x at 238

quoting <u>Farmer</u>, 511 U.S. at 842-43.

Even where a plaintiff has presented sufficient evidence to allow a fact finder

to reach the inference that a prison official had knowledge of the risk on the basis that

risk was obvious, it is clear that an inference may not be compelled, and that the

prison official must be permitted to show that he was actually unaware of the risk in

question. <u>Beers-Capitol</u>, 256 F.3d at 132. Lastly, a prison official who is shown to

have been actually aware of a risk to a prisoner-plaintiff can avoid liability if he

shows that he responded reasonably to the risk, even if the response did not avoid the

ultimate harm. <u>Id.</u>

## 2.   <u>Limits of Supervisory Liability</u>

In addition to the foregoing analysis applicable to claims brought against

supervisors under the Eighth Amendment alleging deliberate indifference to a known

excessive risk, the courts also recognize that supervisors may be exposed to liability

on the basis that they maintained deficient policies that resulted in the plaintiff

sustaining an Eighth Amendment injury. In these kinds of cases based upon

allegations of deficient policies, the Third Circuit has fashioned a four-part test based

upon the reasoning of <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989), for supervisory

liability on an Eighth Amendment claim for failure to supervise. Under this test, "the

plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." Beers-Capitol, 256 F.3d at 134 (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). Accordingly, these approaches are summarized as follows:

> In sum, to make out a claim of deliberate indifference based on direct liability (i.e., insofar as the defendants are alleged to have known of and ignored the particular risk ... posed, the plaintiffs must meet the test from Farmer v. Brennan: They must show that the defendants knew or were aware of and disregarded an excessive risk to the plaintiffs' health or safety, and they can show this by establishing that the risk was obvious. For the plaintiffs' claims seeking to hold supervisors liable for their deficient policies, Sample's four-part test provides the analytical structure for determining whether the policymakers exhibited deliberate indifference to the plaintiffs' risk of injury, it being simply the deliberate indifference test applied to the specific situation of a policymaker.

Id.

In this setting the Third Circuit has noted that, in order to defeat a motion for summary judgment, a plaintiff alleging deliberate indifference on the part of prison officials "must present enough evidence to support the inference that the defendants knowingly and unreasonably disregarded an objectively intolerable risk of harm." Id. at 132. However, a claim of a constitutional deprivation cannot be premised merely

26

on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred.  Quite the contrary, to state a claim under §1983, the plaintiff must show that the supervisory defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; <u>Morse v. Lower Merion School Dist</u>., 132 F.3d 902 (3d Cir. 1997); <u>see also</u> <u>Maine v.Thiboutot</u>, 448 U.S. 1 (1980).  Liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice.  <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988).

<u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).

Thus, in order to defeat a motion for summary judgment, a plaintiff alleging deliberate indifference on the part of supervisory prison officials "must present enough evidence to support the inference that the defendants knowingly and unreasonably disregarded an objectively intolerable risk of harm."   <u>Id.</u> at 132.

27

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W.D. Pa. 2004).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  556 U.S. 662, 676 (2009).

Applying these benchmarks, we have noted that:  'Numerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after Iqbal.' Santiago, 629 F.3d at 130 n. 8 (collecting cases); see also Argueta, 643 F.3d at 70." Bistrian v. Levi, 696 F.3d 352, 366 n. 5 (3d Cir. 2012).  To

28

the extent that supervisory liability survives after <u>Iqbal</u>, the scope of that liability is clearly and narrowly defined.  As the United States Court of Appeals for the Third Circuit has observed:  "'[t]here are two theories of supervisory liability' one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.'  <u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)."  <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 (3d Cir. 2010).

### C.   <u>Disputed Material Issues of Fact Preclude Summary Judgment in Favor of Defendants on Statute of Limitations Grounds</u>

These legal tenets guide our resolution of the summary judgment motion made on behalf of the corrections defendants named in this complaint, and compel a series of differing results for these defendants.  At the outset, we find that factual disputes preclude the entry of summary judgment on behalf of the defendants on statute of limitations grounds.  Here, construed in a light most favorable to the plaintiff, the facts proffered by the defendants reveal that Mikell's complaint was signed and dated within the period of the statute of limitations, and prison records show that Mikell

made several efforts to timely mail some pleadings out of the prison, but was briefly stymied by a poor mailing address and the lack of postage.

While the defendants correctly point out that the Third Circuit refuses to apply the mailbox rule when the prisoner's delay-not the prison-caused the filing to be untimely, in this case there is substantial evidence of repeated good faith efforts by Mikell to timely file his complaint, efforts that were frustrated by lack of postage and the use of an erroneous mailing address. The types of errors cited by the defendants, relating to postage and address problems on what was an otherwise timely filing, do not have the character of the delinquencies which have caused courts in the past to reject prisoner filings as untimely. Those cases which have rebuffed efforts to save filings under the prison mailbox rule have typically noted that the inmate's filing was untimely even before it was placed in the hands of prison officials for mailing. Smith v. Evans, 853 F.2d 155, 156-57 (3d Cir.1988); see also Akinola v. Doe, No. 05-4454, 165 Fed. Appx. 242 (3d Cir. Mar. 15, 2006) (affirming district court's dismissal of Section 1983 action filed four years after the claim accrued); Walker v. Fisher, No. 05-1437, 150 Fed. Appx. 160, 161-162 (3d Cir. Oct. 6, 2005) (holding Walker's Section 1983 claim was barred by the statute of limitation because he filed nearly a year after the limitations period had expired).

In contrast, there is some evidence which tends to show that Mikell made efforts to timely file, but those efforts were stymied by address errors and lack of postage.   On these facts we find that–at a minimum–there is a genuine issue of material fact as to matters which directly relate to the application of the statute of limitations.   Therefore, summary judgment on statute of limitations grounds is inappropriate.  See Hersh v. Allen Products Co., Inc., 789 F.2d 230 (3d Cir. 1986).

**D.**     **Defendants Moore, Tennis, Marsh and Harpster Are Entitled to Summary Judgment, But the Summary Judgment Motion Should Be Denied as to the Remaining Defendants on the Current, Incomplete, Factual Record**

Turning then to an assessment of the merits of Mikell's claims against the nine named defendants, we note at the outset that our task is, in some instances, complicated by the manner in which the parties have framed the legal issues relating to this failure-to-protect claim.   Stripped to its essence, such a claim is straightforward in its proof, and requires evidence which combines a culpable intent, deliberate indifference, with a culpable act, placement of the plaintiff with a fellow inmate who presents a grave risk of harm to the plaintiff.  Yet, while these elements of proof are seemingly straightforward, the parties' approach to these elements is occasionally confusing and oblique.  For his part, Mikell makes allegations of varying clarity against the nine defendants, sometimes providing specific detail and in other instances relying upon little more than the discredited notion of *respondeat superior*

31

liability.  Further, in one instance, Mikell has contradicted the averments made in his complaint in a subsequent deposition.  In another instance, Mikell has failed to contest an exculpatory declaration tendered by another defendant.

The defendants, in turn, critique the adequacy of Mikell's peladings and allegations, but with respect to a number of defendants we are provided no competent proof to rebut Mikell's claims.[4]  Furthermore, at least some of the factual matters which are material to these claims are still the subject of on-going discovery litigation.[5]

Despite these obstacles, we have concluded on the present record that summary judgment is appropriate as to some of the named defendants.  For example, defendants Tennis and Moore, the Superintendent and Deputy Secretary of the Department of Corrections, appear to have been named as defendants merely because they were generally aware of inmate Middleton's refusal to accept a cellmate, and were also responsible for the overall operation of the prison.  Mikell does not allege that the defendants played a direct and active role in the decision to place him in a cell with Middleton on February 20, 2009, knowing of a grave risk of harm to the

---

[4]For example seven of the nine defendants offer no declarations or other evidence relating to either their knowledge of the danger presented by Middleton, or their role in the assignment of Mikell to Middleton's cell.

[5]See Doc. 69, order relating to *in camera* inspection of prison records relating to inmate Middleton's past violent conduct.

plaintiff.  The absence of such proof is telling in this setting since,  stripped to its essentials, Mikell's claims as to these defendants amount to little more than an assertion of *respondeat superior* liability, allegations which are insufficient as a matter of law to establish civil liability in this setting.  Therefore, these defendants should be dismissed from this action.

Similarly, with respect to defendant Harpster, the undisputed evidence shows that Harpster was not the unit manager assigned to Middleton's housing unit in February 2009, and played no role in the housing decision that placed Mikell and Middleton in the same cell.  (Doc. 63, Ex. F.)  Mikell has not contested this factual averment in any way, as he is required to do.  Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007).  Therefore, this fact– which is fatal to Mikell's claims against Harpster– should be deemed undisputed.  Given that it is undisputed that Harpster had no role in the events leading up to Mikell's placement in Middleton's cell and inmate Middleton's assault on the plaintiff, this defendant should also be dismissed from this action.

Likewise, Deputy Marsh is entitled to dismissal from this case.  While Mikell's complaint alleged that Marsh played a knowing and active role in the decision to house Mikell with Middleton, during his deposition Mikell recanted this claim, stating that he had no knowledge or evidence to support this particular claim.  (Doc.

63, Ex. C, p 75.)  Given this concession by Mikell, the claims against defendant Marsh fail and should also be dismissed.

As for the remaining defendants, however, on the current state of the factual record, which is marked by a wealth of competing claims but a dearth of undisputed facts, we cannot say that the defendants have carried their burden, at present, of establishing that they are entitled to summary judgment.  Therefore, it is recommended that the motion be denied as to these defendants, but without prejudice to the parties providing the Court with a more focused presentation relating to these defendants in a subsequent summary judgment motion.[6]

In particular, we note that defendant Davis, the correctional officer who allegedly placed Mikell in Middleton's cell on February 20, 2009 despite Mikell's claims that he expressed fear of assault, is not entitled to dismissal from this action

---

[6]Likewise we find that the factual conflicts, confusion and uncertainty that mark the record prevent any determination regarding whether these remaining defendants are entitled to qualified immunity from damages.  "Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury. See Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (qualified immunity may turn on disputed issues of fact); Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir.1995) ('While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination.')." Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006)

solely based upon his claim that he was not a supervisor who was responsible for ordering Mikell into the cell, but rather was simply following orders.  We note that, in the related legal context of Eighth Amendment failure to intervene claims, the court of appeals has held: "that a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so."  Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002).  In addition, the appeals court held "that a corrections officer can not escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers."  Id.  Thus, in this related Eighth Amendment setting, it has been held that an officer's non-supervisory status does not present a legal defense to a constitutional tort claim, a view which we believe should also extend to failure to protect claims.  Therefore, if the elements of such a claim are otherwise met, or are the subject of a factual dispute, an officer may not avoid liability by simply citing the fact that he was not a supervisory decision-maker.  Id.  The duty to protect extends to all who have knowledge of a specific danger, and are then found to be deliberately indifferent to that danger.

**III**.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' Motion for Summary Judgment (Doc. 59.), be GRANTED in part, and DENIED in part, as follows:

1.    The District Court Should GRANT summary judgment in favor of defendants Moore, Tennis, Marsh and Harpster.

2.    The District Court Should DENY summary judgment in favor of the remaining defendants, and should DENY summary judgment on the defendants' statute of limitations claims.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 22d day of August 2013.

*__S/Martin C.  Carlson__*
Martin C. Carlson
   United States Magistrate Judge